# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
### ATLANTA DIVISION

| | |
|---|---|
| WILLIAM N. TURK, CARLITA B. TURK, and NORMAN RADOW, on behalf of themselves and all other similarly situated, | |
| Plaintiffs, | |
| v. | CIVIL ACTION NO. 1:20-CV-02815-AT |
| MORRIS, MANNING & MARTIN, LLP; TIMOTHY POLLOCK; LARGE & GILBERT, INC.; CONSERVATION PAYS, LLC; JOSEPH C. SKALSKI; ATLANTIC COAST CONSERVANCY, INC.; ATLANTIC COAST CONSERVANCY PROPERTIES, LLC; ENVIRONMENTAL RESEARCH AND MAPPING FACILITY, LLC; THE GEORGIA TUITION ASSISTANCE PROGRAM, INC.; ROBERT D. KELLER; BENNETT THRASHER, LLC; ORNSTEIN-SCHULER INVESTMENTS LLC; ORNSTEIN-SCHULER CAPITAL PARTNERS LLC; CONSERVATION SAVES, LLC; CONSERVATION MATTERS, LLC; WEIBEL & ASSOCIATES, INC.; CLAY WEIBEL; LUCUS MASON, INC.; LUCUS VON ESH; RUSSELL BENNETT; CARLTON WALSTAD; GREENCONE INVESTMENTS, LLC; | |

#3082361v1

| |
|---|
| BLETHEN MINE CONSULTANTS, LLC; MARVIN BLETHEN; GALT MINING INVESTMENTS, LLC; THE NATIONAL WILD TURKEY FEDERATION RESEARCH FOUNDATION, INC.; AMERICAN UPLAND TRUST, LLC; DONALD R. SKLAR; PARTNERSHIP TAX SOLUTIONS, INC.; AARON KOWAN; and THE PRIVATE CLIENT LAW GROUP, |
| Defendants. |

**BRIEF IN SUPPORT OF DEFENDANTS MORRIS, MANNING & MARTIN, LLP AND TIMOTHY POLLOCK'S MOTION TO DISMISS PLAINTIFFS' ORIGINAL CLASS ACTION COMPLAINT**

John E. Floyd
Georgia Bar No. 266413
floyd@bmelaw.com
John H. Rains IV
Georgia Bar No. 556052
rains@bmelaw.com
Jennifer L. Peterson
Georgia Bar No. 601355
peterson@bmelaw.com

**BONDURANT, MIXSON & ELMORE, LLP**
3900 One Atlantic Center
1201 West Peachtree Street, N.W.
Atlanta, Georgia  30309
(404) 881-4100 (telephone)
(404) 881-4111 (facsimile)

*Attorneys for Defendants Morris, Manning & Martin, LLP and Timothy Pollock*

# TABLE OF CONTENTS

**Page**

ARGUMENT AND CITATION OF AUTHORITIES.............................................3

I.   Plaintiffs' RICO Claims Must Be Dismissed as a Matter of Law .................3

    A.   The Federal RICO Claims Are Barred Because They Might
        Have Been Actionable as Securities Fraud ...........................................3

    B.   The Federal RICO Claims against Mr. Pollock
        and Morris Manning Fail Because They Do Not Plausibly
        Allege Operation or Management .......................................................13

    C.   All RICO Claims Fail to State a Claim For Relief Against
        Morris Manning or Mr. Pollock ........................................................17

    D.   The Federal RICO Claims Are Time-Barred ......................................27

II.  Plaintiffs' Fraud-Based Claims Must Be Dismissed
    for Failure to Plead Fraud with Particularity....................................................28

    A.   The Rule 9(b) Heightened Pleading Standard for Fraud.....................29

    B.   Rule 9(b) Applies to Most of Plaintiffs' Claims ................................30

    C.   Plaintiffs' Rule 9(b) Failure Is Pervasive ...........................................31

III. Plaintiffs' Common-Law Claims Must Be Dismissed for
    Failure to State a Claim .....................................................................................35

    A.   Absent an Attorney-Client Relationship,
        Plaintiffs Have No Claims for Professional Negligence
        or Breach of Fiduciary Duty Against Morris Manning or
        Mr. Pollock .........................................................................................36

i

B.  Plaintiffs' Reliance-Based Claims Are Barred by
the Contents of the Promotional Materials..........................................39

C.  Plaintiffs' Common Law Claims Are Time-Barred...........................41

CONCLUSION ....................................................................................................45

# TABLE OF AUTHORITIES

**Case**                                                                 **Page**

*Addley v. Beizer*
    205 Ga. App. 714, 715 (1992) ....................................................39

*AFFCO Invs., LLC v. KPMG, LLP*
    No. CIV.A. H-07-3379, 2008 WL 5070053
    (S.D. Tex. Nov. 20, 2008) ..........................................................8, 12

*Affiliated Ute Citizens of Utah v. United States*
    406 U.S. 128 (1972)........................................................................9

*Agency Holding Corp. v. Malley-Duff & Assocs.*
    483 U.S. 143 (1987)......................................................................27

*Allmond v. Young*
    314 Ga. App. 230 (2012) .............................................................43

*Almanza v. United Airlines, Inc.*
    851 F.3d 1060 (11th Cir. 2017) .......................................18–19, 21

*Am. Dental Ass'n v. Cigna Corp.*
    605 F.3d 1283 (11th Cir. 2010) ............................... 13, 18, 22–23, 29–30, 32

*Am. United Life Ins. Co. v. Martinez*
    480 F.3d 1043 (11th Cir. 2007) ..................................................30

*Ambrosia Coal & Constr. Co. v. Morales*
    482 F.3d 1309 (11th Cir. 2007) ............................................32–33

*Ashcroft v. Iqbal*
    556 U.S. 662 (2009)........................................................14, 25, 30

*Awad v. Omar*
    No. 18 CIV. 10810 (NRB), 2019 WL 5727327
    (S.D.N.Y. Nov. 5, 2019)..............................................................12

*Azrielli v. Cohen Law Offices*
21 F.3d 512, 521–22 (2d Cir. 1994) ............................................................15

*Bailey v. Trenam Simmons, Kemker, Scharf, Barkin, Frye & O'Neill, P.A.*
938 F. Supp. 825, 827 (S.D. Fla. 1996)......................................................15

*Bald Eagle Area Sch. Dist. v. Keystone Fin., Inc.*
189 F.3d 321 (3d Cir. 1999) ...........................................................4, 10–12

*Bateman v. Countrywide Home Loans*
No. CIV. 12-00033 SOM, 2012 WL 5593228, at *1
(D. Haw. Nov. 14, 2012) .............................................................................33

*Bauer v. Weeks*
267 Ga. App. 617 (2004) .............................................................................42

*Baumer v. Pachl*
8 F.3d 1341, 1344 (9th Cir. 1993) ...............................................................15

*Bell Atl. Corp. v. Twombly*
550 U.S. 544 (2007).....................................................................................16

*Boyle v. United States*
556 U.S. 938 (2009).....................................................................................21

*Brooks v. Blue Cross & Blue Shield of Fla., Inc.*
116 F.3d 1364 (11th Cir. 1997) ..................................................................29

*Brooks v. Freeport Kaolin Co.*
253 Ga. 678 (1985) .....................................................................................41

*Chaiken v. Lewis*
754 So. 2d 118, 118 (Fla. Ct. App. 2000.....................................................39

*Cisneros v. Petland, Inc.*
972 F.3d 1204, 1211 (11th Cir. 2020) ...................................................22–23

*Cochran Mill Assocs. v. Stephens*
  286 Ga. App. 241 (2007) ...............................................................43

*Cohen v. Feiner*
  No. 18 C 7328, 2019 WL 1787527 (N.D. Ill. Apr. 24, 2019) .......................8

*DeWit v. Firstar Corp.*
  879 F. Supp. 947 (N.D. Iowa 1995) .....................................................15–16

*Dep't of Econ. Dev. v. Arthur Andersen & Co.*
  924 F. Supp. 449 (S.D.N.Y. 1996) ..............................................15

*Domico v. Kontas*
  No. 3:12CV1449, 2013 WL 1248638 (M.D. Pa. Mar. 26, 2013) ............8, 12

*Duke Galish, L.L.C. v. Arnall Golden Gregory, L.L.P.*
  288 Ga. App. 75 (2007) .................................................................41

*Dusek v. JPMorgan Chase & Co.*
  832 F.3d 1243 (11th Cir. 2016) ............................................10, 12

*EIG Energy Fund XIV, L.P. v. Keppel Offshore & Marine Ltd.*
  No. 18 CIV. 1047 (PGG), 2020 WL 2319127
  (S.D.N.Y. May 11, 2020) ...........................................................12

*Estate of Nixon v. Barber*
  340 Ga. App. 103, 105 (2017) ....................................................36

*Fagan v. Fischer*
  No. 14-7013 (FLW) (TJB), 2019 WL 5587286
  (D.N.J. Oct. 30, 2019) .................................................................8

*Feldman v. Am. Dawn, Inc.*
  849 F.3d 1333 (11th Cir. 2017) ................................................30

*Fin. Sec. Assur., Inc. v. Stephens, Inc.*
  500 F.3d 1276 (11th Cir. 2007) ...................................................5

*Garfield v. NDC Health Corp.*
466 F.3d 1255 (11th Cir. 2006) .....................................................................29

*Gatz v. Ponsoldt*
297 F. Supp. 2d 719 (D. Del. 2003) ...........................................................11

*Gerald v. Doran*
169 Ga. App. 22 (1983) ...............................................................................42

*Gilmore v. Berg*
820 F. Supp. 179 (D.N.J. 1993).....................................................................15

*Gilmore v. Gilmore*
No. 09 CIV. 6230 WHP, 2011 WL 3874880
(S.D.N.Y. Sept. 1, 2011)...........................................................................8, 11

*Greenfield Plaza Inv'rs LLC v. Stearns Bank N.A.*
No. CV 12-389-PHX-SRB, 2012 WL 13024089
(D. Ariz. Aug. 14, 2012)............................................................................8, 12

*Handeen v. Lemaire*
112 F.3d 1339 (8th Cir. 1997) ......................................................................14

*Hardaway Co. v. Parsons, Brinckerhoff, Quade & Douglas, Inc.*
267 Ga. 424 (1997)......................................................................................42

*Hays v. Page Perry, LLC*
26 F. Supp. 3d 1311 (N.D. Ga. 2014)............................................................37

*Hendry v. Wells*
286 Ga. App. 774 (2007) .............................................................................42

*Hunter, Maclean, Exley & Dunn, P.C. v. Frame*
269 Ga. 844 (1998)..................................................................................42, 44

*Infante v. Bank of Am. Corp.*
468 F. App'x 918 (11th Cir. 2012)...........................................................19, 37

*In re Enron Corp. Secs., Derivative & ERISA Litig.*
    284 F. Supp. 2d 511 (S.D. Tex. 2003) ...........................................................12

*In re LIBOR-Based Fin. Instruments Antitrust Litig.*
    935 F. Supp. 2d 666 (S.D.N.Y. 2013) ......................................................11–12

*Intelligent Inv. Int'l LLC v. Fu*
    No. 1:17-CV-05296-RWS, 2019 WL 1281204
    (N.D. Ga. Mar. 20, 2019) .......................................................................8, 12

*J & M Assocs. v. Callahan*
    753 F. Supp. 2d 1183 (S.D. Ala. 2010) .......................................................40

*Kivisto v. Miller, Canfield, Paddock & Stone*
    *PLC*, 413 F. App'x 136 (11th Cir. 2011) ....................................................32

*Kothari v. Patel*
    262 Ga. App. 168 (2003) ..............................................................................41

*Landreth Timber Co. v. Landreth*
    471 U.S. 681 (1985) .........................................................................................6

*Larson v. Northrop Corp.*
    21 F.3d 1164 (D.C. Cir. 1994) .....................................................................44

*Lawrie v. Ginn Dev. Co., LLC*
    656 F. App'x 464 (11th Cir. 2016) ..............................................................32

*Legacy Acad., Inc. v. Mamilove, LLC*
    297 Ga. 15 (2015) ........................................................................................40

*Lehman v. Lucom*
    727 F.3d 1326 (11th Cir. 2013) ...................................................................27

*Licht v. Watson*
    567 F. App'x 689 (11th Cir. 2014) ................................................................4

*Longino v. Bank of Ellijay*
228 Ga. App. 37 (1997) ...............................................................27

*Madanes v. Madanes*
981 F. Supp. 241 (S.D.N.Y. 1997) .............................................15

*Manson v. Stacescu*
11 F.3d 1127 (2d Cir. 1993) .......................................................26

*Marquis Towers, Inc. v. Highland Grp.*
265 Ga. App. 343 (2004) ............................................................39

*Martinek v. Diaz*
No. 11 C 7190, 2012 WL 2953183
(N.D. Ill. July 18, 2012) ...............................................................8

*McClung Surveying, Inc. v. Worl*
247 Ga. App. 322 (2000) ............................................................43

*McMillian v. McMillian*
310 Ga. App. 735 (2011) ............................................................39

*Menuskin v. Williams*
940 F. Supp. 1199 (E.D. Tenn. 1996) ........................................15

*Nat'l Group for Commc'ns & Computers Ltd. v. Lucent Techs. Inc.*
420 F. Supp. 2d 253 (S.D.N.Y. 2006) .........................................44

*Nettleton v. Stogsdill*
899 N.E.2d 1252 (Ill. App. Ct. 2008) .........................................37

*Nolte v. Pearson*
994 F.2d 1311 (8th Cir. 1993) ....................................................15

*Oehlerich v. Llewellyn*
285 Ga. App. 738 (2007) ......................................................36–37

*Pack v. Stanley*
No. 1:10-cv-2200-AT, 2012 WL 13001918
(N.D. Ga. May 18, 2012) .................................................................11

*PBBM–Rose Hill, Ltd. v. Commissioner*
No. 26096-14 (T.C. Oct. 7, 2016)
*aff'd*, 900 F.3d 193 (5th Cir. 2018) ...............................................34

*Pedraza v. United Guar. Corp.*
114 F. Supp. 2d 1347 (S.D. Ga. 2000) .........................................44

*Pelletier v. Zweifel*
921 F.2d 1465 (11th Cir. 1991) ......................................................33

*Penn, LLC v. Prosper Bus. Dev. Corp.*
No. 2:10-CV-993, 2011 WL 2118072
at *13 (S.D. Ohio May 27, 2011) ...................................................15

*Perkumpulan Inv'r Crisis Ctr. Dressel-WBG v. Wong*
No. C09-1786-JCC, 2014 WL 1047946
(W.D. Wash. Mar. 14, 2014) ...........................................................12

*Ray v. Spirit Airlines, Inc.*
836 F.3d 1340 (11th Cir. 2016) .................................................24–27

*Reves v. Ernst & Young*
507 U.S. 170 (1993)......................................................................13–14

*Reynolds v. Henderson & Lyman*,
903 F.3d 693 (7th Cir. 2018) ..........................................................39

*Rezner v. Bayerische Hypo-Und Vereinsbank AG*
630 F.3d 866 (9th Cir. 2010) ..........................................................26

*Rolfes v. MBNA Am. Bank N.A.*
416 F. Supp. 2d 745 (D.S.D. 2005) ...............................................15

*Rosemann v. Sigillito*
    956 F. Supp. 2d 1082 (E.D. Mo. 2013) ....................................................14–15

*Rowe v. Gary, Williams, Parenti, Watson & Gary, P.L.L.C.*
    181 F. Supp. 3d 1161 (N.D. Ga. 2016)..................................17, 28, 30–31, 33

*Schutz v. Kagan Lubic Lepper Finkelstein & Gold LLP*
    552 F. App'x 79 (2d Cir. 2014) ....................................................................37

*SEC v. Edwards*
    540 U.S. 389 (2004)........................................................................................8

*SEC v. W.J. Howey Co.*
    328 U.S. 293 (1946)........................................................................................6

*SEC v. Zandford*
    535 U.S. 813 (2002)........................................................................................9

*Seidl v. Greentree Mtg. Co.*
    30 F. Supp. 2d 1292 (D. Colo. 1998) ...........................................................15

*Shneydershteyn-Kuvykin v. iPayment Holdings, Inc.*
    No. 14-CV-4728, 2015 WL 6507451
    (E.D.N.Y. Oct. 27, 2015)..............................................................................26

*Shores v. Troglin*
    260 Ga. App. 696 (2003) ..............................................................................42

*Siavage v. Gandy*
    350 Ga. App. 562 (2019) ..............................................................................30

*Smiley v. Blasingame*
    325 Ga. App. 769 (2019) ..............................................................................36

*Smith v. Alimenta Processing Corp.*
    197 Ga. App. 57 (1990) ................................................................................43

*Stubbs v. Hall*
  308 Ga. 354, 369–70 (2020) ........................................................42

*Summit Auto. Grp., LLC v. Clark*
  298 Ga. App. 875 (2009) ..........................................................39

*Transatlantic, LLC v. Humana, Inc.*
  666 F. App'x 788 (11th Cir. 2016) ............................................17

*United Food & Comm'l Workers Unions & Empl'rs Midwest*
*Health Benefits Fund v. Walgreen Co.*
  719 F.3d 849 (7th Cir. 2013) .....................................................18

*United States ex rel. Atkins v. McInteer*
  470 F.3d 1350 (11th Cir. 2006) .................................................35

*Univ. of Md. at Balt. v. Peat, Marwick, Main & Co.*
  996 F.2d 1534 (3d Cir. 1993) ....................................................15

*Walter v. Drayson*
  538 F.3d 1244 (9th Cir. 2008) ..................................................15

*Williams v. Fortson, Bentley & Griffin*
  212 Ga. App. 222 (1994) ..........................................................40

*Williamson v. Tucker*
  645 F.2d 404 (5th Cir. May 1981)...............................................7

*Wylie v. Denton*
  323 Ga. App. 161 (2013) ....................................................24, 27

**Federal Rules, Statues and Other Authorities:**

Fed. R. Civ. P. 8(a)(2)....................................................................3

Fed. R. Civ. P. 9(b) ...............................................................28-35

Fed. R. Civ. P. 12(b)(6)..................................................................................3

15 U.S.C. § 77b(a)(1) ....................................................................................6

15 U.S.C. § 78c(a)(10) ..................................................................................6

15 U.S.C. § 78j(b) ..........................................................................................9

18 U.S.C. § 1962(c) ...........................................................................13, 17, 24

18 U.S.C. § 1964(c) .............................................................................3, 10, 24

17 C.F.R. § 240.10b-5(c) ..............................................................................9

O.C.G.A. § 9-3-31...........................................................................................41

O.C.G.A. § 16-14-6(c) ...................................................................................24

Plaintiffs are high-income taxpayers who made risky real estate investments five, six, and seven years ago. They acquired membership interests in limited liability companies that directly or indirectly owned property. One of the primary purposes of their investment was to claim a charitable tax deduction that flowed through the LLC to the Plaintiffs when the LLC donated a conservation easement over the property.[1] Plaintiffs were warned that the IRS could disallow these deductions. Now that the IRS is attempting to do so at the LLC level (but not at the individual level), Plaintiffs seek to hold someone else responsible for the IRS consequences they may one day face.

But Plaintiffs were never even clients of the law firm of Morris, Manning & Martin, LLP ("Morris Manning") or its now-retired partner Timothy Pollock. For this and other reasons, Plaintiffs' Complaint fails to state any claims against these two Defendants upon which relief can be granted. Despite the Complaint's great length and verbosity, it neither plausibly nor particularly alleges a single fraudulent act by Morris Manning or Mr. Pollock. Thus, its RICO claims fail—and also because

---

[1]     The Complaint uses the invented term "SCE Strategy" to imply that the sale of ownership interests in these various LLCs, together with the provision of associated professional services, were part of a cohesive, unified strategy or scheme. *See, e.g.*, Compl. [Dkt. 1] ¶ 1. Plaintiffs' repeated use of this term underscores the failure of the Complaint to plausibly allege the existence of such a unified strategy.

(i) they could have been brought as securities fraud claims; (ii) the allegations of Morris Manning's leadership are impermissibly conclusory; (iii) they fail to allege essential RICO elements, including predicate acts of racketeering, a scheme to defraud, an association-in-fact enterprise, and proximate causation of Plaintiffs' injuries; and (iv) they are time-barred.

Moreover, Plaintiffs' fraud-based claims, including RICO, do not even come close to complying with Rule 9(b)'s requirements for pleading fraud with particularity. Compounding these errors, the Complaint's remaining claims are foreclosed by clear Georgia law. The Complaint fails to allege an attorney-client relationship between Morris Manning and any Plaintiff or Class Member. It fails to acknowledge that each Plaintiff and Class Member, in the promotional materials and investor agreements the Complaint repeatedly cites, was *plainly warned* of the risk that the IRS might challenge these transactions. And it alleges only stale, time-barred claims, without alleging any cognizable basis for tolling the statutes of limitations. In sum, the Complaint provides no basis for holding a respected law firm liable to these Plaintiffs or the putative class. Accordingly, the Complaint must be dismissed with prejudice in its entirety.

## ARGUMENT AND CITATION OF AUTHORITIES

**I.  Plaintiffs' RICO Claims Must Be Dismissed as a Matter of Law**

Plaintiffs' RICO claims must be dismissed with prejudice. *See* Fed. R. Civ. P. 8(a)(2), 12(b)(6). The federal RICO claims fail because they could have been brought as securities fraud claims, and they do not plausibly allege that Mr. Pollock or Morris Manning operated or managed the RICO enterprise. Both the federal and state RICO claims fail to plead any predicate act by Mr. Pollock or Morris Manning; they also fail to plausibly plead the existence of a scheme, an enterprise, and proximate causation. In addition, the federal RICO claims are time-barred.

**A.  The Federal RICO Claims Are Barred Because They Might Have Been Actionable as Securities Fraud.**

Allegations "that would have been actionable as fraud in the . . . sale of securities" cannot support a federal RICO claim. 18 U.S.C. § 1964(c). All of Plaintiffs' federal RICO allegations in the Complaint appear to be precisely this kind of allegation and therefore fail to state a claim. "Prior to 1995, a private plaintiff could assert a civil RICO claim for securities law violations sounding in 'garden variety' fraud. Inasmuch as 'fraud in the sale of securities' was a predicate offense in both criminal and civil RICO actions, plaintiffs regularly elevated fraud to RICO violations because RICO offered the potential bonanza of recovering treble

3

damages." *Bald Eagle Area Sch. Dist. v. Keystone Fin., Inc.*, 189 F.3d 321, 327 (3d Cir. 1999) (citations omitted).

"However, in 1995, Congress enacted the Private Securities Litigation Reform Act ('PSLRA')," amending the federal RICO statute to exclude actionable securities fraud as a RICO predicate act. *Id.* Now, "a plaintiff cannot avoid the RICO Amendment's bar by pleading mail fraud, wire fraud and bank fraud as predicate offenses in a civil RICO action if the conduct giving rise to those predicate offenses amounts to securities fraud." *Licht v. Watson*, 567 F. App'x 689, 693 (11th Cir. 2014).

The PSLRA's prohibition applies in this case because the Complaint alleges conduct that, if true, might have been actionable as fraud in the sale of securities. The Investor Agreements to which the Complaint refers, *e.g.*, ¶ 262(e), (i), repeatedly call the LLC interests the Plaintiffs purchased "securities." *See* Ex. A at Ex. 1, at 3, 4, 13, 14.[2]

Even without such clear documentary evidence, Plaintiffs' allegations

---

[2]    A true and correct copy of Mr. Radow's executed Investor Agreement of Gulf Land Group LLC is attached to Exhibit A, Declaration of Jeffrey K. Douglass ("Douglass Decl.") at Exhibit 1. *See also* Douglass Decl. ¶ 3. The existence of such Investor Agreements is alleged in the Complaint, *see* ¶ 262(e), (i), and they are central to Plaintiffs' claims because it is the means by which Plaintiffs purchased the LLC interests that led to the charitable deductions they claimed, *see id.* ¶¶ 176, 188. Thus, this Court may consider this and the other attachments to this brief without

themselves independently establish that the challenged conduct may have been the sale of securities. Specifically, the Complaint alleges a "common fraudulent scheme," Compl. ¶ 266, "pre-planned," *id*. ¶ 85, and uniformly implemented, *id*. ¶¶ 57, 94, to sell land that would become subject to a conservation easement, *id.* ¶¶ 1–3. The alleged association-in-fact of Defendants, Sponsors, and Other Participants to generate fees and commissions from selling such land and taking the conservation easement tax deductions is the RICO enterprise alleged in Plaintiffs' federal RICO claims in Counts 1 and 2. *Id.* ¶¶ 208, 239, 242.

The first steps Plaintiffs describe in the scheme are the formation of an LLC that owned property that would become the subject of a conservation easement, and the formation of a second LLC that would sell membership interests to individuals and acquire a majority interest in the property-owning LLC.[3] Plaintiffs allege they paid money to purchase an interest in those second LLCs, and as a result of that purchase, they were allocated a valuable tax deduction proportional to their

converting this motion into one for summary judgment. *Fin. Sec. Assur., Inc. v. Stephens, Inc.*, 500 F.3d 1276, 1285 (11th Cir. 2007).

[3]      Compl. ¶ 57(a), (d). Although Plaintiffs refer to "Syndicate[s]," it is clear that these are simply the LLCs in which Plaintiffs purchased ownership interests. *See id*. ¶¶ 128 (LakePoint Land Group, LLC), 150 (Industrial S&G Partners, LLC), 172 (Gulf Land Group, LLC).

ownership interest in the LLC.[4] In other words, the purchase of a membership interest in a LLC was a prerequisite to claiming a tax deduction.

Thus, the membership interests in the LLCs may be securities for purposes of the PSLRA. Both the Securities Act of 1933 and the Exchange Act of 1934 include "investment contract[s]" in their definition of a "security." 15 U.S.C. §§ 77b(a)(1), 78c(a)(10). The term "investment contract" is one of the means employed under those acts to bring "instruments of more variable character" within the coverage of the federal securities laws. *Landreth Timber Co. v. Landreth*, 471 U.S. 681, 686 (1985). In *SEC v. W.J. Howey Co.*, 328 U.S. 293, 298–99 (1946), the Supreme Court held that an investment contract is a scheme in which a person (1) invests money (2) in a common enterprise and (3) is led to expect profits solely from the efforts of the promoter or a third party—someone other than the investor.

The first element here is met because each Plaintiff specifically alleges the amount of money he or she invested in a specific LLC.[5] The second element is met because each investment was in a common enterprise where it was pooled with those

---

[4]  *Id*. ¶¶ 132, 144, 176, 188 (Radow), 154, 166 (Turks); *see also id.* ¶ 126 (Plaintiffs' deductions were allocated in proportion to their ownership interests in the respective LLCs).

[5]  *Id.* ¶¶ 132, 154, 176.

of other purchasers of membership interests in the LLC.[6]

The third element of the "investment contract" test is met because each Plaintiff expected profits to result solely from the efforts of the promoter or a third party.[7] Indeed, Plaintiffs affirmatively allege that "they were not, in fact, knowledgeable about complex tax matters and tax planning" and "relied on" the Defendants when they invested in the LLCs.[8] Profits are considered to be derived solely from the efforts of others where, as in Plaintiffs' allegations, "the efforts made by those other than the investor are the undeniably significant ones, those essential managerial efforts which affect the failure or success of the enterprise." *Williamson v. Tucker*, 645 F.2d 404, 418 (5th Cir. May 1981). Here, according to the Complaint,

---

[6]    *Id.* ¶ 57(e).

[7]    The profits included tax deductions several times the size of Plaintiffs' investments. For example, the Turks invested $75,031 in Industrial S&G Partners, LLC in 2014 and reported a charitable contribution deduction of $246,808 on their individual tax return for that year. *Id.* ¶¶ 154, 166. Mr. Radow invested $150,000 in LakePoint Land Group LLC in 2013 and reported a charitable contribution deduction of $394,194 on his individual tax return for that year. *Id.* ¶¶ 132, 144. Mr. Radow also invested $200,000 in Gulf Land Group LLC in 2015 and reported a charitable contribution deduction of $851,619 on his individual tax return for that year. *Id.* ¶¶ 176, 188. Indeed, the Complaint alleges that potential investors were promised a "<u>return</u>" in the form of a tax deduction of more than 2.5 times their principal investment in the LLCs. *Id.* ¶¶ 57(d), 126 (emphasis added).

[8]    *Id.* ¶ 65.

those efforts included all the steps necessary to realize and document the conservation easement, including preparing the easement deed, the baseline documentation report, and the Form 8283 appraisal summary.[9]

Consistent with the broad definition of security set forth in *Howey*, numerous federal courts have held that LLC membership interests are securities that render the PSLRA's bar applicable to a RICO case.[10] Likewise for the LLC membership interests at issue here, which would satisfy the *Howey* investment contracts test and are therefore securities according to Plaintiffs' allegations. The PSLRA prohibition would thus apply because the alleged fraud occurred in connection with the purchase

---

[9]    *Id.* ¶¶ 135–136, 157–158, 179–180.

[10]   *See, e.g.*, *Intelligent Inv. Int'l LLC v. Fu*, No. 1:17-CV-05296-RWS, 2019 WL 1281204, at *5–*7 (N.D. Ga. Mar. 20, 2019); *Cohen v. Feiner*, No. 18 C 7328, 2019 WL 1787527, at *4 (N.D. Ill. Apr. 24, 2019); *Fagan v. Fischer*, No. 14-7013 (FLW) (TJB), 2019 WL 5587286, at *8–*10 (D.N.J. Oct. 30, 2019); *Domico v. Kontas*, No. 3:12CV1449, 2013 WL 1248638, at *8 n.11 (M.D. Pa. Mar. 26, 2013); *Gilmore v. Gilmore*, No. 09 CIV. 6230 WHP, 2011 WL 3874880, at *5 (S.D.N.Y. Sept. 1, 2011), *aff'd*, 503 F. App'x 97, 99 (2d Cir. 2012); *Martinek v. Diaz*, No. 11 C 7190, 2012 WL 2953183, at *13 (N.D. Ill. July 18, 2012); *Greenfield Plaza Inv'rs LLC v. Stearns Bank N.A.*, No. CV 12-389-PHX-SRB, 2012 WL 13024089, at *6 (D. Ariz. Aug. 14, 2012); *AFFCO Invs., LLC v. KPMG, LLP*, No. CIV.A. H-07-3379, 2008 WL 5070053, at *5 (S.D. Tex. Nov. 20, 2008), *aff'd*, 625 F.3d 185, 189 (5th Cir. 2010). *See also SEC v. Edwards*, 540 U.S. 389, 393 (2004) ("'Congress' purpose in enacting the securities laws was to regulate *investments*, in whatever form they are made and by whatever name they are called.' To that end, it enacted a broad definition of 'security,' sufficient 'to encompass virtually any instrument that might be sold as an investment.'") (internal citation omitted).

or sale of those securities. Section 10(b) of the Securities Exchange Act of 1934 generally prohibits fraud "in connection with the purchase or sale of *any security*." 15 U.S.C. § 78j(b) (emphasis added); *see also* 17 C.F.R. § 240.10b-5(c) (also prohibiting fraud "in connection with the purchase or sale of any security"). The Supreme Court has explained that the phrase "in connection with" in Section 10(b) should "be construed 'not technically and restrictively, but flexibly to effectuate [the statute's] remedial purposes.'" *SEC v. Zandford*, 535 U.S. 813, 819 (2002) (quoting *Affiliated Ute Citizens of Utah v. United States*, 406 U.S. 128, 151 (1972)).

The Complaint repeatedly alleges a conspiracy to "promote" and "sell" tax savings via the purchase of interests in an LLC. *E.g.*, Compl. ¶ 85.[11] The Supreme Court has explained that fraudulent conduct is "in connection with" the purchase or sale of securities when the alleged fraud "coincides" with securities transactions and the events are "not independent." *Zandford*, 535 U.S. at 820. Plaintiffs here allege that Defendants were engaged in a fraudulent scheme before, during, and after Plaintiffs purchased LLC membership interests.[12] The Complaint alleges that the

---

[11]    *See also* Compl. ¶¶ 242 (alleging "fraudulently selling" conservation easement transactions), 247 (alleging effort to fraudulently "persuade and mislead the Plaintiffs to agree to participate").

[12]    *See, e.g.*, *id.* ¶¶ 64 (Defendants continued to promote and sell after they knew it was improper), 68 (Defendants continued to promote and encourage despite

fraud and the sale of LLC membership interests coincided temporally and no allegations suggest they were independent of one another. In fact, each Plaintiff alleges that he or she (1) paid to purchase an LLC membership interest[13] and (2) took a deduction in exact proportion to that membership interest.[14]

It makes no difference for purposes of the PSLRA's application that Plaintiffs do not actually allege securities laws violations (relying instead upon mail or wire fraud), because 18 U.S.C. § 1964(c) expressly prohibits reliance on any conduct that *would have been actionable* as fraud in the purchase or sale of securities. There is no requirement that securities fraud actually be alleged. As the Eleventh Circuit succinctly stated, "A plaintiff may not dodge this bar by pleading other offenses as predicate acts in a civil RICO action if the claim is based on conduct that would have been actionable as securities fraud."[15] This Court has further noted:

---

knowing the IRS was scrutinizing and challenging syndicated conservation easements for potential abuse).

[13]     *Id.* ¶¶ 132, 154, 176.

[14]     *Id.* ¶¶ 140, 162, 183.

[15]     *Dusek v. JPMorgan Chase & Co.*, 832 F.3d 1243, 1249 (11th Cir. 2016); *see also Bald Eagle*, 189 F.3d at 330 (plaintiffs cannot plead "mail fraud, wire fraud and bank fraud as predicate offenses in a civil RICO action if the conduct giving rise to those predicate offenses amounts to securities fraud").

> Congress intended this amendment to prohibit plaintiffs from pleading "other specified offenses, such as mail or wire fraud, as predicate acts of racketeering under civil RICO if such offenses are based on conduct that would have been actionable as securities fraud."

*Pack v. Stanley*, No. 1:10-cv-2200-AT, 2012 WL 13001918, at *8 (N.D. Ga. May 18, 2012) (quoting Sen. R. No. 104-98, at 17).

In determining whether the PSLRA bars a civil RICO claim, courts review a complaint in its entirety, rather than parsing the plaintiff's allegations to distinguish between the various alleged predicate acts.[16] And when, as here, a plaintiff alleges a "'single scheme,' courts have held that 'if *any* predicate act is barred by the PSLRA it is fatal to the entire RICO claim.'"[17]

Because the Investor Agreements to which the Complaint refers consistently

---

[16]    *See, e.g.*, *Bald Eagle*, 189 F.3d at 330 (holding that the PSLRA bars an action even when only some of the predicate acts are actionable as securities fraud, because allowing a "surgical presentation of the cause of action . . . undermine[s] the congressional intent behind the RICO Amendment."); *Gatz v. Ponsoldt*, 297 F. Supp. 2d 719, 731 (D. Del. 2003) ("A plaintiff cannot circumvent the PSLRA's exclusion of securities fraud as a RICO predicate act through artful pleading").

[17]    *In re LIBOR-Based Fin. Instruments Antitrust Litig.*, 935 F. Supp. 2d 666, 730 (S.D.N.Y. 2013) (emphasis added), *vacated on antitrust grounds*, 823 F.3d 759 (2d Cir. 2016) (emphasis added); *Gilmore*, 2011 WL 3874880, at *6 (dismissing RICO claims because where plaintiff alleges a single scheme, and "the securities aspects of the fraud must be aggregated with the non-securities aspects").

reference the LLC interests as "securities,"[18] and because the Complaint repeatedly references a common scheme to sell interests in LLCs,[19] dismissal with prejudice is required.[20]

In the same vein, the Complaint also alleges that "[t]he claims of all Class Members originate from the same fraudulent transaction predicated by the Defendants."[21] And it also alleges a single enterprise.[22] By alleging a single scheme, a single transaction, and a single enterprise, Plaintiffs have inextricably linked their fraud-based RICO claims to the sale of securities in the form of LLC memberships, and the PSLRA bars those claims completely.[23]

---

[18]    Ex. A at Ex. 1, at 3, 4, 13, 14.

[19]    Compl. ¶¶ 1, 8, 85, 250.

[20]    *See, e.g.*, *Dusek*, 832 F.3d at 1249; *Bald Eagle*, 189 F.3d at 327; *In re LIBOR*, 935 F. Supp. 2d at 738; *Gatz*, 297 F. Supp. 2d at 733; *Intelligent Inv.*, 2019 WL 1281204, at *7; *Domico*, 2013 WL 1248638, at *10; *Gilmore*, 2011 WL 3874880, at *6; *Greenfield Plaza*, 2012 WL 13024089, at *11; *AFFCO Invs.*, 2008 WL 5070053, at *8 (all dismissing PSLRA-barred RICO claims with prejudice).

[21]    *Id.* ¶ 224.

[22]    *Id.* ¶ 211.

[23]    *In re Enron Corp. Secs., Derivative & ERISA Litig.*, 284 F. Supp. 2d 511, 622 (S.D. Tex. 2003); *Perkumpulan Inv'r Crisis Ctr. Dressel-WBG v. Wong*, No. C09-1786-JCC, 2014 WL 1047946, at *7 (W.D. Wash. Mar. 14, 2014); *Awad v. Omar*, No. 18 CIV. 10810 (NRB), 2019 WL 5727327, at *5 (S.D.N.Y. Nov. 5, 2019); *EIG*

### B.     The Federal RICO Claims against Mr. Pollock and Morris Manning Fail Because They Do Not Plausibly Allege Operation or Management.

Attorneys like Mr. Pollock and the Morris Manning firm cannot violate § 1962(c) unless they "participate in the operation or management" of the RICO enterprise. *Reves v. Ernst & Young*, 507 U.S. 170, 185 (1993). In other words, "*some part in directing the enterprise's affairs is required*" to establish a violation of § 1962(c); thus, merely preparing documents based on a client's records does not give rise to RICO liability. *Id.* at 179, 186. Here, Plaintiffs' Complaint provides no factual allegations that plausibly show that Mr. Pollock or Morris Manning participated in the operation or management of the alleged RICO enterprise.

Instead, the Complaint is peppered with impermissibly conclusory assertions about Morris Manning's purported management role, such as that the scheme was "developed by the Morris Manning Defendants," Compl. ¶ 3, and that the "Morris Manning Defendants, and specifically Pollock, were the architect and developer," *id.* ¶¶ 69, 86. This Court should disregard these assertions, "eliminat[ing] any allegations in the complaint that are merely legal conclusions," and instead examine the well-pleaded factual allegations of the complaint. *Am. Dental Ass'n v. Cigna*

---

*Energy Fund XIV, L.P. v. Keppel Offshore & Marine Ltd.*, No. 18 CIV. 1047 (PGG), 2020 WL 2319127, at *9 (S.D.N.Y. May 11, 2020).

*Corp.*, 605 F.3d 1283, 1290 (11th Cir. 2010) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009)).[24]

Once this conclusory verbiage is set aside, what remains in the 165-page Complaint is insufficient to plausibly show that Mr. Pollock or Morris Manning had any part in actually directing the affairs of the alleged enterprise.[25] To the contrary, the Complaint merely alleges that Mr. Pollock and Morris Manning provided legal advice and drafting for the LLCs.[26] But that is what lawyers do every day. "Furnishing a client with ordinary professional assistance, even when the client happens to be a RICO enterprise, will not normally rise to the level of participation sufficient to satisfy the Supreme Court's pronouncements in *Reves*." *Handeen v. Lemaire*, 112 F.3d 1339, 1348 (8th Cir. 1997); *Rosemann v. Sigillito*, 956 F. Supp.

---

[24]    In *Iqbal*, the Supreme Court considered the similar allegation that Attorney General Ashcroft was "the principal architect" of the discriminatory policies at issue. 556 U.S. at 680–81. The Court concluded, "These bare assertions . . . amount to nothing more than a 'formulaic recitation of the elements,'" and disregarded them. *Id.* at 681.

[25]    Indeed, Plaintiffs' reaching allegations of a RICO enterprise contradict these suggestions of Morris Manning's leadership. *Cf.* Compl. ¶ 244 ("<u>Defendants and the Other Participants</u> maintained an interest in and control of the Enterprise and also conducted or participated in the conduct of the affairs of the Enterprise through a pattern of racketeering activity.") (emphasis added). If everyone is in control of the enterprise, no one is.

[26]    *E.g.*, *id.* ¶¶ 70, 95.

2d 1082, 1098 (E.D. Mo. 2013) (same). Nor will a professional's persuasive power to recommend allegedly fraudulent action. *Madanes v. Madanes*, 981 F. Supp. 241, 257 (S.D.N.Y. 1997).

Thus, federal courts routinely dismiss RICO complaints that fail to allege facts to support an inference that the defendant attorney operated or managed the enterprise.[27] Even activities that were beneficial, important, or essential to the operation of the RICO enterprise do not establish the requisite management or operation of the enterprise. *Univ. of Md. at Balt. v. Peat, Marwick, Main & Co.*, 996 F.2d 1534, 1539 (3d Cir. 1993) ("Simply because one provides goods or services that ultimately benefit the enterprise does not mean that one becomes liable under RICO as a result."); *Dep't of Econ. Dev. v. Arthur Andersen & Co.*, 924 F. Supp. 449, 466 (S.D.N.Y. 1996) ("providing important services to a racketeering enterprise is not the same as directing the affairs of the enterprise"); *DeWit v. Firstar Corp.*,

---

[27]    *See, e.g.*, *Walter v. Drayson*, 538 F.3d 1244, 1249 (9th Cir. 2008); *Azrielli v. Cohen Law Offices*, 21 F.3d 512, 521–22 (2d Cir. 1994); *Baumer v. Pachl*, 8 F.3d 1341, 1344 (9th Cir. 1993); *Nolte v. Pearson*, 994 F.2d 1311, 1317 (8th Cir. 1993); *Penn, LLC v. Prosper Bus. Dev. Corp.*, No. 2:10-CV-993, 2011 WL 2118072, at *13 (S.D. Ohio May 27, 2011); *Rolfes v. MBNA Am. Bank N.A.*, 416 F. Supp. 2d 745, 752 (D.S.D. 2005); *Seidl v. Greentree Mtg. Co.*, 30 F. Supp. 2d 1292, 1305 (D. Colo. 1998); *Menuskin v. Williams*, 940 F. Supp. 1199, 1210 (E.D. Tenn. 1996); *Bailey v. Trenam Simmons, Kemker, Scharf, Barkin, Frye & O'Neill, P.A.*, 938 F. Supp. 825, 827 (S.D. Fla. 1996); *Gilmore v. Berg*, 820 F. Supp. 179, 183 (D.N.J. 1993).

879 F. Supp. 947, 966 (N.D. Iowa 1995) ("even provision of services essential to the operation of the RICO enterprise itself is not the same as participating in the conduct of the affairs of the enterprise").

It is telling that ¶ 69 of the Complaint suggests ways Morris Manning *could have* managed the enterprise—but stops short of alleging that it did so. Instead, ¶ 69 merely alleges the neutral facts that "[t]he Morris Manning Defendants" worked with each LLC and with each Defendant. But the Supreme Court has made clear that these allegations of parallel conduct, without more, do not "nudge[] their claims across the line from conceivable to plausible." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

While all three LLCs used Morris Manning's professional services, it is equally likely that they retained Morris Manning for independent, rational reasons that do not "plausibly suggest" the firm's operation and management of the enterprise. *Id.* at 557. The unsurprising fact that a respected law firm was hired to provide legal advice and draft and review legal documents suggests nothing. Allegations of merely parallel conduct are insufficient to establish the operation and management of a RICO enterprise. *See id.* at 554; *Almanza v. United Airlines, Inc.*, 851 F.3d 1060, 1069 (11th Cir. 2017) (explaining that parallel conduct, whether conscious or unconscious, "fails to pass the plausibility threshold").

By alleging only the provision of ordinary professional services, Plaintiffs fail to state a claim under § 1962(c) and, by extension, under § 1962(d).[28]

### C. The RICO Claims Fail To State A Claim For Relief Against Morris Manning Or Mr. Pollock.

Aside from the foregoing fundamental flaws with Plaintiffs' federal RICO claims, both their federal and Georgia RICO claims must be dismissed because they fail to plausibly allege at least four essential elements of a RICO claim.

#### 1. *The Complaint Fails to Allege Any Predicate Act.*

All of Plaintiffs' federal and Georgia RICO claims fail to state a claim and must be dismissed because the Complaint does not plead a single predicate act of racketeering activity by Morris Manning or Mr. Pollock. *Transatlantic, LLC v. Humana, Inc.*, 666 F. App'x 788, 790 (11th Cir. 2016) (affirming dismissal with prejudice). Paragraph 262 purports to list 34 predicate acts of mail fraud or wire fraud, and not one mentions either Morris Manning or Mr. Pollock. The substantive RICO claims, Counts 1 and 3, must therefore be dismissed.

#### 2. *The Complaint Fails to Allege a Scheme to Defraud.*

All the RICO claims, including the conspiracy Counts 2 and 4, must also be

---

[28]    "It almost goes without saying that, having failed to sufficiently plead the underlying substantive RICO claim, Plaintiffs have also failed to sufficiently allege their RICO conspiracy claim." *Rowe*, 181 F. Supp. 3d at 1194.

dismissed because the Complaint has not alleged with particularity Morris Manning or Mr. Pollock's participation in a scheme to defraud. The Complaint alleges that there was a single fraudulent scheme, but fails to "plausibly and particularly allege facts showing . . . that a conspiracy created the alleged [single] scheme." *Am. Dental*, 605 F.3d at 1290–91; *cf.* Compl. ¶ 1. Plausibly and particularly pleading a conspiracy is essential because "RICO does not penalize parallel, uncoordinated fraud." *United Food & Comm'l Workers Unions & Empl'rs Midwest Health Benefits Fund v. Walgreen Co.*, 719 F.3d 849, 855–56 (7th Cir. 2013). Thus, "allegations of parallel conduct, accompanied by nothing more than a bare assertion of a conspiracy, do not plausibly suggest a conspiracy." *Am. Dental*, 605 F.3d at 1294. Particularly with respect to the participation of Morris Manning and Mr. Pollock, Plaintiffs have not plausibly alleged such a conspiracy.

Despite devoting an entire section to "Conspiracy Allegations" (¶¶ 208–220), the Complaint's allegations of a conspiracy are wholly conclusory. Plaintiffs allege, with no factual support, a "meeting of the minds that [the co-conspirators] would work together as a team." Compl. ¶ 211. But "a conclusory allegation of agreement at some unidentified point does not supply facts adequate to show illegality." *Twombly*, 550 U.S. at 557. Thus, this Court is required to disregard these allegations that merely state legal conclusions. *Am. Dental*, 605 F.3d at 1293; *see also Almanza*,

851 F.3d at 1068 (without "alleg[ing] facts show[ing] that this alleged agreement actually exists, their allegations simply recite a legal conclusion"). "In other words, the plaintiffs had to assert allegations explaining how exactly the defendants went about entering into an agreement with each other. It wasn't enough that the defendants all ended up doing the same fraudulent thing. . . . That's precisely the problem that burdens Plaintiffs here." *Almanza*, 851 F.3d at 1068–69.

Not only does the Complaint fail to allege a scheme to defraud, but the documents to which it repeatedly refers establish just the opposite. Evidence that Defendants warned investors that the charitable deductions were uncertain is fundamentally incompatible with allegations that Defendants intended to deceive investors about claiming the deduction. *Cf., e.g.*, Compl. ¶ 68.

And that is precisely what the documents cited in the Complaint show.[29] For example, the Investor Agreement that Mr. Radow signed for Gulf Land Group, LLC specifically warned investors of the risks involved with claiming charitable deductions for conservation easements: "[C]haritable contributions, the appraisal methodologies and techniques used in establishing the value thereof, and the tax

---

[29]   When documents to which the complaint refers "contradict the general and conclusory allegations of the complaint, these documents govern." *Infante v. Bank of Am. Corp.*, 468 F. App'x 918, 921 n.2 (11th Cir. 2012).

laws applicable thereto, have come under significant scrutiny and criticism by Treasury officials in recent years." Ex. A at Ex. 1, at 6. It further warned of "substantial risks" including "the valuation of the donation itself," which "MAY BE CONSIDERED ESPECIALLY PROBLEMATIC AND HIGHLY SPECULATIVE" and may be subject to heightened IRS scrutiny. *Id.* at 6, 7. And it cautioned that the IRS could audit the LLC and "a Member might incur attorney's fees, court costs, and other expenses in connection with contesting a proposed deficiency asserted by the IRS." *Id.* at 7.[30] Such warnings of the exact harms Plaintiffs now allege do not plausibly suggest an intent to participate in a scheme to defraud.

---

[30] The Gulf Land Investor Agreement could not have been more explicit in warning about the IRS-related uncertainties involved with these transactions. The Investor Agreement even warned of *exactly* what happened here: "Potential Investors should also be aware that the IRS may not only challenge the valuation of the conservation easement and fee simple donation directly, but may also indirectly challenge the appraisal methodologies and techniques used in establishing the value of donated property, or challenge the appraisal's compliance with highly technical requirements set forth in the Treasury Regulations." Ex. A at Ex. 1, at 6.

The Investor Agreement also spent pages explicitly warning about several specific tax issues not implicated here, including the bona fide partner status of members; the status of the transactions as reportable transactions; and their status under the Treasury's "Anti-Abuse Regs," common law tax doctrines, the economic substance doctrine, and as disguised sales. *Id.* at 8–11. Mr. Radow and the other Plaintiffs invested and claimed deductions only after Defendants ensured that their eyes were opened to these risks.

### 3. *The Complaint Fails to Allege a RICO Enterprise.*

Plaintiffs' allegations of a RICO association-in-fact enterprise impermissibly state only legal conclusions. *See* Compl. ¶ 245 ("The Enterprise had an ascertainable structure separate and apart from the pattern of racketeering activity in which the Defendants engaged.").[31] Without more than these incantations, the Complaint "does not allege that Defendants existed as an association-in-fact separate and apart from the alleged RICO activity, but rather that came together strictly for the purpose of creating these allegedly fraudulent tax shelters." *Eaves v. Designs for Fin., Inc.*, 785 F. Supp. 2d 229, 263 (S.D.N.Y. 2011) (dismissing RICO claim with prejudice); *see also Almanza*, 851 F.3d at 1068 (a RICO complaint must allege "that Defendants acted as a continuing *unit*, and not merely independently"). Indeed, instead of alleging a continuing *unit*, the Complaint expressly alleges that participants came into and departed from the alleged enterprise at various points in time. *See, e.g.*, Compl. ¶¶ 98, 102–103, 215. In particular, the Complaint specifically alleges that by the end of 2016, Morris Manning was no longer working with other Defendants on

---

[31]     Not only is this an impermissible legal conclusion, it is an unnecessary one. The Supreme Court held in 2009 that proving a RICO association-in-fact enterprise does not require the recitation of an "ascertainable structure." *Boyle v. United States*, 556 U.S. 938, 940–41 (2009). This allegation is apparently an artifact from a complaint filed by Plaintiffs' counsel against some other defendant(s) in a much earlier matter.

these transactions. *Id.* ¶¶ 103, 215.

The Complaint also fails to allege a qualifying shared purpose among the participants of the enterprise. Plaintiffs assert the "the purpose of generating and sharing fees and commissions," *id.* ¶ 239, but such an "abstract common purpose, such as a generally shared interest in making money, will not suffice." *Cisneros v. Petland, Inc.*, 972 F.3d 1204, 1211 (11th Cir. 2020). "Rather, where the participants' ultimate purpose is to make money for themselves, a RICO plaintiff must plausibly allege that the participants shared the purpose of enriching themselves through a particular criminal course of conduct." *Id.* By failing to particularly allege a single act of fraud by Morris Manning or Mr. Pollock, Plaintiffs have failed to allege that they shared in an actionable common purpose of the enterprise.

Once Plaintiffs' conclusory allegations are discarded, all that remains of the Complaint are allegations that supply "'obvious alternative explanation[s],' which suggest lawful conduct rather than the unlawful conduct the plaintiff would ask the court to infer." *Am. Dental*, 605 F.3d at 1290 (quoting *Twombly*, 550 U.S. at 567). For example, Plaintiffs' allegation that all the conspirators were motivated by fees establishes only that the Defendants' behavior may be "consistent with conspiracy, but just as much in line with a wide swath of rational and competitive business

22

strategy." *Twombly*, 550 U.S. at 554.[32]

The Complaint alleges merely that Morris Manning was paid "hourly" and "flat" fees for its advice and services.[33] Compl. ¶ 70. Absent is any allegation that these fees differed from the firm's usual fees for such services (after all, they are attorneys and attorneys provide legal advice and services). Alleging the most common ways that attorneys are customarily paid for legitimate work means that the Complaint proves only the "obvious alternative explanation" of entirely lawful conduct.

In sum, the Complaint fails to state a claim because it alleges that Morris Manning's "conduct is equally indicative of rational independent action as it is concerted, illegitimate conduct and thus 'stays in neutral territory'" rather than "plausibly suggest[ing] conspiracy." *Am. Dental*, 605 F.3d at 1295 (quoting *Twombly*, 550 U.S. at 557). "Plaintiffs' allegations of Defendants' parallel conduct, absent a plausibly-alleged 'meeting of the minds,' fail to 'nudge[] their claims across

---

[32]   *See also Cisneros*, 972 F.3d at 1212 ("Cisneros has alleged no facts that plausibly support the inference that the defendants were collectively trying to make money in pet sales by fraud, which is a common purpose sufficient to find a RICO enterprise, as opposed to the 'obvious alternative explanation' that they were simply trying to make money in pet sales, which is not.") (internal citations omitted).

[33]   Notably, the Complaint does not allege that any Plaintiff or Class Member paid any fees to Morris Manning or Mr. Pollock.

the line from conceivable to plausible.'" *Id.* at 1296 (quoting *Twombly*, 550 U.S. at 557, 570). And absent this "meeting of the minds," all of Plaintiffs' RICO claims (Counts 1, 2, 3, and 4) must be dismissed for failure to state a claim.

### 4.      The Complaint Fails to Allege Proximate Causation.

Plaintiffs' RICO claims also fail because their allegations do not establish any direct nexus between a predicate act by Mr. Pollock or Morris Manning and the injury Plaintiffs have purportedly sustained.[34] Courts interpreting both the federal and Georgia RICO statutes hold this nexus to be an essential part of the proximate cause element of RICO. "When a court evaluates a RICO claim for proximate causation, the central question it must ask is whether the alleged violation led directly to the plaintiff's injuries." *Ray v. Spirit Airlines, Inc.*, 836 F.3d 1340, 1349 (11th Cir. 2016); *accord Wylie v. Denton*, 323 Ga. App. 161, 166 (2013) (Georgia RICO). Because the Complaint alleges no predicate act by Morris Manning or Mr. Pollock that proximately caused any Plaintiff's injury, the RICO claims against them must be dismissed.

As noted above, the Complaint's list of RICO predicate acts, ¶ 262, does not

---

[34]     Civil RICO damages are available only to a "person injured in his business or property <u>by reason of</u> a violation of section 1962." 18 U.S.C. § 1964(c) (emphasis added); *accord* O.C.G.A. § 16-14-6(c) (Georgia RICO).

identify a single predicate act by Morris Manning or Mr. Pollock. But even if it had, it fails to connect any act to any Plaintiff's injury. Plaintiffs' sole suggestion of proximate cause is the boilerplate allegation, repeated four times, that they have been injured "[a]s a proximate result of Defendants' unlawful pattern of illegal fraudulent conduct as described above." Compl. ¶¶ 291, 302, 311, 322. "[T]his allegation amounts to little more than a '[t]hreadbare recital[] of the elements of a cause of action, supported by mere conclusory statements,' which is plainly insufficient to support a cause of action." *Ray*, 836 F.3d at 1350 (quoting *Iqbal*, 556 U.S. at 678).

If Plaintiffs' injury was "causing them to pay substantial fees and transaction costs, be exposed back-taxes, to interest and penalties . . . and incur additional accounting and legal fees and expenses to deal with the IRS fallout,"[35] Compl. ¶ 9, nothing in the Complaint explains how these varying injuries flowed directly from any predicate act of wire fraud or mail fraud. And even if Plaintiffs had pleaded that their injuries were the reasonably foreseeable result of Defendants' acts, "the fact that an injury is reasonably foreseeable is not sufficient to establish proximate cause

---

[35]    The Complaint does not allege that any Plaintiff has had his or her personal tax liability altered by the IRS, even though that is an element of its proposed class definition. *Compare* Compl. ¶ 221 ("All Persons who . . . have been assessed back-taxes, penalties, and/or interest by the Internal Revenue Service . . . .") *with id.* ¶¶ 9, 329, 336, 341, 351, 355, 362 (alleging only that Plaintiffs have been "exposed").

in a RICO action—the injury must be direct." *Ray*, 836 F.3d at 1349.

If Plaintiffs' injury is the future assessment of back taxes, interest, and/or penalties, that injury will not flow directly from any predicate act because it will have first been suffered by the LLCs. An injury is not direct if it is first suffered by another. And Plaintiffs have not purported to bring their claims on behalf of the injured LLCs, nor can they; a member lacks standing to prosecute civil RICO claims on behalf of the entity. *Shneydershteyn-Kuvykin v. iPayment Holdings, Inc.*, No. 14-CV-4728, 2015 WL 6507451, at *4 (E.D.N.Y. Oct. 27, 2015) (citing *Manson v. Stacescu*, 11 F.3d 1127, 1131 (2d Cir. 1993)).

Nor have Plaintiffs pursued their claims on behalf of the most direct victim of any purported tax fraud: the United States government. As the Ninth Circuit explained, "It was the United States that lost tax revenue as a direct result of [the admitted tax-shelter] fraud. [Plaintiff]'s asserted injury only indirectly resulted from HVB's fraudulent activity against the United States." *Rezner v. Bayerische Hypo- und Vereinsbank AG*, 630 F.3d 866, 873 (9th Cir. 2010) (reversing summary judgment for RICO plaintiff). Thus, RICO proximate cause was not established by the *Rezner* plaintiff, even though he, unlike any Plaintiff here, had been personally audited and ordered to pay $11 million in back taxes and interest. *Id.* at 869, 874.

Without explaining how any predicate acts of mail and wire fraud by Morris

Manning or Mr. Pollock led *directly* to the Plaintiffs' injuries, the Complaint fails to state a claim against them for violations of federal and Georgia RICO. "A plaintiff cannot allege merely that an act of racketeering occurred and that he lost money. He must show a causal connection between his injury and a predicate act." *Longino v. Bank of Ellijay*, 228 Ga. App. 37, 41 (1997). And a plaintiff must do more than plead "merely that his injury was an eventual consequence of the [predicate act] or that he would not have been injured but for the [predicate act]." *Wylie*, 323 Ga. App. at 166. "The connection between the racketeering activity and the injury can be neither remote, purely contingent, nor indirect." *Ray*, 836 F.3d at 1349.

Accordingly, all RICO claims (Counts 1, 2, 3, and 4) must be dismissed for failure to state a claim.

### D.    The Federal RICO Claims Are Time-Barred

The four-year statute of limitations for federal civil RICO actions, *Agency Holding Corp. v. Malley-Duff & Assocs.*, 483 U.S. 143, 156 (1987), expired long ago. It began to run when Plaintiffs' injury "was or should have been discovered." *Lehman v. Lucom*, 727 F.3d 1326, 1330 (11th Cir. 2013). Taking Plaintiffs at their word that they were "injured as a result of the Defendants' and their co-conspirators' misrepresentations and omissions in carrying out the transactions and subsequently filing tax returns," Compl. ¶ 267, it is clear that Mr. Radow discovered his injuries

27

by December 18, 2015 at the latest, when he received an email about the IRS audit of LakePoint Land Group, LLC. *Id.* ¶ 262(*l*).[36] Such communications put Plaintiffs on notice that they should diligently investigate the fraud of which they now complain. *See Rowe v. Gary, Williams, Parenti, Watson & Gary, P.L.L.C.*, 181 F. Supp. 3d 1161, 1174 (N.D. Ga. 2016) (Totenberg, J.), *denial of sanctions rev'd*, 703 F. App'x 777 (11th Cir. 2017).

Because more than four years elapsed between the IRS notice and the filing of this Complaint, Plaintiffs' federal RICO claims are time-barred and must be dismissed.

## II.   Plaintiffs' Fraud-Based Claims Must Be Dismissed for Failure to Plead Fraud with Particularity.

Not only the RICO counts, but all fraud-based counts of the Complaint— Counts 1, 2, 3, 4, 6, and 8—must be dismissed under Rule 9(b) of the Federal Rules of Civil Procedure. Rule 9(b) requires, "In all averments of fraud or mistake, the circumstance constituting fraud or mistake shall be stated with particularity." This heightened pleading standard applies to all of Plaintiffs' fraud-based claims, including RICO, but Plaintiffs have made no attempt to comply with that standard

---

[36]   Mr. Radow must not have been too alarmed by this news. According to the Complaint, he went on to claim a charitable deduction based on his 2015 investment in Gulf Land Group, LLC on his tax return for that year. Compl. ¶ 189.

in their claims against Morris Manning and Mr. Pollock.

### A.      The Rule 9(b) Heightened Pleading Standard for Fraud.

To plead fraud with particularity, "[a] plaintiff must allege: (1) the precise statements, documents, or misrepresentations made; (2) the time, place, and person responsible for the statement; (3) the content and manner in which these statements misled the Plaintiffs; and (4) what the defendants gained by the alleged fraud." *Am. Dental*, 605 F.3d at 1291. "This means the who, what, when, where, and how" of the circumstances of the fraud. *Garfield v. NDC Health Corp.*, 466 F.3d 1255, 1262 (11th Cir. 2006).

As regards the "who," "in a case involving multiple defendants, the complaint should inform each defendant of the nature of his alleged participation in the fraud," rather than lumping defendants together. *Brooks v. Blue Cross & Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1381 (11th Cir. 1997). "This Rule serves an important purpose in fraud actions by alerting defendants to the precise misconduct with which they are charged and protecting defendants against spurious charges of immoral and fraudulent behavior." *Id.* at 1370–71. Plaintiffs' failure to plead fraud with particularity here is especially damaging to Morris Manning and Mr. Pollock, whose professional and personal integrity and reputation are being disparaged by these widely publicized, broad-brush, false allegations.

In addition, every count of the Complaint must be supported by factual allegations that state a "plausible" claim for relief. *Rowe*, 181 F. Supp. 3d at 1165–66 (citing *Twombly*, 550 U.S. at 555–56, and *Iqbal*, 556 U.S. at 678). This "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Rowe*, 181 F. Supp. 3d at 1166 (quoting *Twombly*, 550 U.S. at 555). Plaintiffs' RICO claims particularly suffer from conclusory recitations of labels and elements and therefore must be dismissed.

## B.   Rule 9(b) Applies to Most of Plaintiffs' Claims.

Rule 9(b)'s heightened pleading standard applies to fraud-based civil RICO claims (Counts 1, 2, 3, and 4). *Am. Dental*, 605 F.3d at 1291. It also applies to claims for negligent misrepresentation (Count 6).[37] *Feldman v. Am. Dawn, Inc.*, 849 F.3d 1333, 1340 (11th Cir. 2017). And it applies to common-law claims of fraud (Count 8) and claims for aiding and abetting and civil conspiracy based on fraud (Counts 9 and 10).[38] *Am. United Life Ins. Co. v. Martinez*, 480 F.3d 1043, 1065, 1070 (11th Cir. 2007). With those counts dismissed, the only causes of action that would remain

---

[37]   The Complaint alleges two separate claims both designated Count 6, negligent misrepresentation and breach of fiduciary duty.

[38]   More fundamentally, Count 9 with respect to fraud must be dismissed because "the tort of 'aiding and abetting fraud' does not exist as a basis for liability under Georgia law." *Siavage v. Gandy*, 350 Ga. App. 562, 566 (2019).

against Morris Manning and Mr. Pollock are those premised upon breach of duty (Counts 5, 6, 7, and 8, plus Counts 9 and 10 with respect to breach of fiduciary duty), which we address in Section III below.

### C.    Plaintiffs' Rule 9(b) Failure Is Pervasive

Plaintiffs' pleading hints at an awareness that Rule 9(b) exists, but does not come close to satisfying its requirements. The Complaint's list of RICO-predicate frauds in ¶ 262 includes in its 34 subparagraphs some details about communications by various Defendants that allegedly amount to mail or wire fraud. Yet, as noted above, not *one* of these 34 subparagraphs identifies any act by Morris Manning or Mr. Pollock. On this basis alone, all of the Complaint's fraud-based claims against these two Defendants—including RICO, as discussed above—must be dismissed.

The closest the Complaint comes to suggesting any act of fraud by Morris Manning or Mr. Pollock is in the catch-all subparagraphs 262(ff), (gg), and (hh), which vaguely allege "[a]ll other mailed or emailed communications between any of the Defendants" and the LLC members. This fails not only to satisfy the *who*, *when*, and *where* requirements of Rule 9(b), but also the more material requirements of *what* was misrepresented, *how* Plaintiffs were misled, or "*what* the Defendants gained by the alleged fraud." *Rowe*, 181 F. Supp. 3d at 1185. Without this crucial information, "[t]hese allegations provide no basis in fact upon which the Court could

conclude that any specific act of any specific Defendants is indictable for mail or wire fraud." *Brooks*, 116 F.3d at 1381. This failure to plead with particularity is fatal to all of Plaintiffs' fraud-based claims.[39]

If these vague allusions to "communications" were not bad enough, the catch-all fraud allegations of ¶ 262(ff), (gg), and (hh) are also egregious examples of the "lumping together" of defendants that the Eleventh Circuit has consistently held to violate Rule 9(b). "In a case involving multiple defendants, the complaint must not lump together all of the defendants, as 'the complaint should inform each defendant of the nature of his alleged participation in the fraud.'" *Kivisto v. Miller, Canfield, Paddock & Stone, PLC*, 413 F. App'x 136, 139 (11th Cir. 2011) (quoting *Ambrosia Coal & Constr. Co. v. Morales*, 482 F.3d 1309, 1317 (11th Cir. 2007)). By "lumping together" Morris Manning and Mr. Pollock with the other Defendants in ¶ 262, the Complaint fails to alert either Morris Manning or Mr. Pollock "to the precise misconduct with which they are charged." *Brooks*, 116 F.3d at 1370.

Plaintiffs' separate litany of "fraudulent statements and omissions" in ¶ 265

---

[39]     Dismissal is appropriate where "Plaintiffs' complaint provides a list of mailings and wires, without ever identifying any actual fraud." *Am. Dental*, 605 F.3d at 1292. *See also Lawrie v. Ginn Dev. Co., LLC*, 656 F. App'x 464, 474 (11th Cir. 2016) ("Rule 9(b) requires more than an allegation that a misrepresentation was made; it requires a plaintiff to identify with precision what the misrepresentation actually was.").

of the Complaint further underscores their failure to comply with Rule 9(b). The 27 subparagraphs of ¶ 265 each state a general allegation of fraud by "Defendants and their [nonparty] co-conspirators," and all 27 subparagraphs lack particularity as to *who*, *when*, *where*, *what* precisely was said or omitted, and *how* the statement or omission harmed the Plaintiffs. In addition to impermissibly lumping together all Defendants, *see Ambrosia Coal*, 482 F.3d at 1317, the broad allegations of ¶ 265 are totally unconnected to the mail and wire fraud allegations of ¶ 262.

Even if there were any link between a particular ¶ 262 communication and a particular ¶ 265 fraud, Rule 9(b) imposes the burden of identifying that link on Plaintiffs, not on Defendants or the Court. *See Pelletier v. Zweifel*, 921 F.2d 1465, 1518 (11th Cir. 1991) (Defendants and the Court should not have "to sift through the facts presented and decide for themselves which were material to the particular cause of action asserted, a difficult and laborious task indeed"); *Bateman v. Countrywide Home Loans*, No. CIV. 12-00033 SOM, 2012 WL 5593228, at *1 (D. Haw. Nov. 14, 2012) (dismissing complaint where "the court is asked to match allegations to claims and parties as if attempting to fit jigsaw puzzle pieces together to create a picture").

It takes more to plead a RICO claim than a lengthy list. *Cf. Rowe*, 181 F. Supp. 3d at 1186 ("Although Plaintiffs' 67-page Complaint appears quite detailed, the

factual allegations are not plausible and do not meet the heightened standard applied to RICO claims."). Once the Complaint's "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements" are stripped away, *id.* at 1166 (quoting *Twombly*, 550 U.S. at 555), all that remains is a jumble of isolated events, disconnected actors, and rueful feelings. The factual remnant fails to particularly—much less plausibly—link the Plaintiffs' purchase of an LLC interest and their claims of conservation easement tax deductions to the speculative injuries they suggest. "As a result, it is difficult to construe a framework in support of Plaintiffs' alleged RICO scheme." *Id.* at 1185.

To be sure, Plaintiffs may feel genuinely anxious about the possibility of future IRS action. *See* Compl. ¶ 9 (alleging that Plaintiffs are "exposed" to IRS penalties). And, despite having been warned of the IRS-related risks and uncertainties, they may actually have been surprised by the IRS's recent hardline position on conservation easement tax deductions.[40] *See id.* ¶¶ 121–122. But—

---

[40]     Contrary to Plaintiffs' assertions, *e.g.*, Compl. ¶ 192, the IRS's present stance on conservation easement deductions was not inevitable. For example, it was not until 2016—after all of the deductions in this Complaint had been claimed—that the Tax Court first held that the extinguishment-proceeds clause in an easement deed violated the perpetuity requirement of 26 C.F.R. § 1.170A-14. *See PBBM–Rose Hill, Ltd. v. Commissioner*, No. 26096-14 (T.C. Oct. 7, 2016), *aff'd*, 900 F.3d 193 (5th Cir. 2018). Indeed, official IRS guidance from 2008 had approved this kind of extinguishment-proceeds language, which understandably became industry-standard. *See* IRS Priv. Ltr. Rul. 2008-36-014 (Sept. 5, 2008). Nonetheless, Plaintiffs

especially given the existence of those ample warnings—they have not pleaded the requisite details to establish whether and how Morris Manning or any Defendant misled or defrauded any Plaintiff when he or she purchased an LLC interest five, six, or seven years ago. Nor have they established how a diverse collection of accountants, lawyers, managers, and appraisers in multiple states agreed to create and undertake this alleged fraudulent scheme. Plaintiffs' efforts to convert purely speculative harms into treble damages not only threatens Morris Manning and Mr. Pollock with wide-ranging and expensive discovery,[41] but also risks needlessly harming their "goodwill and reputation"[42] as respected professionals.

In sum, Plaintiffs' failure to adequately plead fraud requires dismissal of all of their fraud-based claims with prejudice.

## III.  Plaintiffs' Common-Law Claims Must Be Dismissed for Failure to State a Claim.

Plaintiffs' remaining common-law claims also must be dismissed. The

---

received ample warnings and disclaimers about the IRS-related risks and uncertainties before they chose to invest. *See, e.g.*, Ex. A at Ex. 1, at 6–11.

[41]    "The particularity requirement of Rule 9 is a nullity if Plaintiff gets a ticket to the discovery process without identifying a single claim." *United States ex rel. Atkins v. McInteer*, 470 F.3d 1350, 1359 (11th Cir. 2006) (affirming dismissal <u>with prejudice</u>).

[42]    *Id.*

Complaint fails to allege an attorney-client relationship between any of the Plaintiffs and Morris Manning or Mr. Pollock, which is fatal to Plaintiffs' professional negligence and breach of fiduciary duty claims. Moreover, the disclaimers in the Promotional Materials repeatedly referenced in the Complaint demonstrate that the Plaintiffs did not and could not have reasonably relied on any alleged misrepresentation by Morris Manning or Mr. Pollock, barring their reliance-based claims. Finally, the allegations in the Complaint establish on their face that Plaintiffs' common-law claims are time-barred and that Plaintiffs are not entitled to tolling under any of the theories alleged in the Complaint.

### A. Absent an Attorney-Client Relationship, Plaintiffs Have No Claims for Professional Negligence or Breach of Fiduciary Duty Against Morris Manning or Mr. Pollock.

Claims for legal malpractice must be dismissed when the plaintiff does not have an attorney-client relationship with a lawyer or his law firm. *Estate of Nixon v. Barber*, 340 Ga. App. 103, 105 (2017).[43] Nowhere in the 165-page Complaint do

---

[43]     Claims for breach of fiduciary duty that, like these, are premised on the same relationship, the same conduct, and the same damages as a claim for legal malpractice must also fail for lack of an attorney-client relationship. *Smiley v. Blasingame*, 325 Ga. App. 769, 776 (2019); *compare* Compl. ¶¶ 324, 327, 329 *with* Compl. ¶¶ 339, 340, 341 (reciting same basis for duty of care, same causation, and same damages).
     Alternatively, this Court may also dismiss the claims as duplicative. As the Georgia Court of Appeals held in *Oehlerich v. Llewellyn*, where "claims for breach

Plaintiffs allege that any individual Plaintiff or class member had an attorney-client relationship with Mr. Pollock or the Morris Manning law firm. To the contrary, the Complaint alleges that prospective investors had their own advisor who was not Mr. Pollock. Compl. ¶ 96. In addition, the Investor Agreements Plaintiffs signed affirm that there have been *no representations* whatsoever by Morris Manning or Mr. Pollock: "In connection with Investor's purchase of the membership interest, no oral or written representations or warranties have been made to the Investor by any person other than Frank A. Schuler IV or Matthew Ornstein." Ex. A at Ex. 1, at 2.[44]

Similarly, the Promotional Materials referred to dozens of times in the Complaint urge prospective investors to consult their own legal advisors, and the

---

of fiduciary duty . . . are simply duplications of [a] . . . malpractice claim," those claims fail as well. 285 Ga. App. 738, 740 (2007). Federal courts construing Georgia law, as well as courts from other jurisdictions, routinely dismiss similar claims on this basis. *See, e.g.*, *Hays v. Page Perry, LLC*, 26 F. Supp. 3d 1311, 1320 (N.D. Ga. 2014) ("The Plaintiff's remaining claims are duplicative of the professional malpractice claim. Georgia courts routinely dismiss fiduciary duty and contract claims when they rely on the same allegations . . ."); *see also Schutz v. Kagan Lubic Lepper Finkelstein & Gold LLP*, 552 F. App'x 79, 79–80 (2d Cir. 2014) (affirming dismissal of breach of fiduciary duty claim as duplicative of professional negligence claim); *Nettleton v. Stogsdill*, 899 N.E.2d 1252, 1267 (Ill. App. Ct. 2008) (dismissing breach of fiduciary duty claim as duplicative of professional negligence claim where both claims were "based on the same operative facts and alleged the same injury").

[44]     Again, when documents to which the complaint refers "contradict the general and conclusory allegations of the complaint, these documents govern." *Infante*, 468 F. App'x at 921 n.2.

Investor Agreements contain an affirmation that the investor has done so. Ex. A at Ex. 1, at 2; Ex. 2 at 10; Ex. 3 at 3.[45] As noted above, no Morris Manning attorney was any investor's own tax advisor, and Plaintiffs have not alleged that they had an attorney-client relationship with Morris Manning, Mr. Pollock, or any other Morris Manning lawyer. Indeed, the Investment Agreements confirm that *no* reliance on *any* advice was involved with the Plaintiffs' claiming a charitable deduction: "Additionally, each Member is required to treat the Company's items on his individual return in a manner consistent with the treatment of such items on the Company's return." Ex. A at Ex. 1, at 7. In other words, despite Plaintiffs' allegation that they "followed the advice of the Defendants" when reporting the charitable contribution deduction on their own tax returns, Compl. ¶ 189, the documents establish that there was no reliance involved in that act—just contractual compliance.

    At best, the Complaint suggests that Morris Manning had an attorney-client

---

[45]    A true and correct copy of the Information Package for LakePoint Land Group, LLC is attached to Exhibit A, Douglass Decl., at Exhibit 2. *See* Compl. ¶¶ 128, 262(c) (alleging Mr. Radow's receipt of Promotional Materials for LakePoint). A true and correct copy of the Information Package for Gulf Land Group, LLC is attached to Exhibit A, Douglass Decl., at Exhibit 3. *See* Compl. ¶ 172 (alleging Mr. Radow's receipt of Promotional Materials for Gulf Land Group LLC). *See also* Douglass Decl. ¶¶ 4, 5; Compl. ¶¶ 57(d), 130 (alleging central role of Promotional Materials in alleged scheme).

relationship with the *LLCs* for which it provided legal opinion letters. Compl. ¶ 95. But the LLCs have not brought this suit. Nor is an attorney for an LLC an attorney for its members.[46] Because Mr. Pollock and Morris Manning are not alleged to have an attorney-client relationship with any Plaintiff, Plaintiffs' claims for professional negligence and breach of fiduciary duty must be dismissed.[47]

### B.   Plaintiffs' Reliance-Based Claims Are Barred by the Contents of the Promotional Materials.

Some of Plaintiffs' common law claims involve an element of justifiable or reasonable reliance. *See Summit Auto. Grp., LLC v. Clark*, 298 Ga. App. 875, 880 (2009) (fraud, *cf.* Compl. ¶ 349); *Marquis Towers, Inc. v. Highland Grp.*, 265 Ga. App. 343, 346 (2004) (negligent misrepresentation, *cf.* Compl. ¶ 334). Plaintiffs' allegations of the Promotional Materials, and the contents of those materials,

---

[46]     *See Addley v. Beizer*, 205 Ga. App. 714, 715 (1992) (attorney for corporation is not attorney for its officers); *Chaiken v. Lewis*, 754 So. 2d 118, 118 (Fla. Ct. App. 2000) (attorney for partnership is not attorney for its partners); *Reynolds v. Henderson & Lyman*, 903 F.3d 693, 695–96 (7th Cir. 2018) (attorney for LLC is not attorney for managing member).

[47]     The Complaint's Count 7 seeks disgorgement of fees of fees paid to Morris Manning as damages for its alleged breach of fiduciary duty. Compl. ¶ 344. Of course, disgorgement is not a cause of action. *See McMillian v. McMillian*, 310 Ga. App. 735, 738–39 (2011) (discussing disgorgement as a remedy). But even as a remedy, Count 7 must also be dismissed because the Complaint does not allege that any Plaintiff or Class Member paid any fees to Morris Manning or Mr. Pollock.

establish that Plaintiffs cannot have justifiably relied on any Defendant's representations, so those claims must be dismissed as a matter of law.

For example, the Information Package for LakePoint Land Group, LLC that Mr. Radow received expressly discourages reliance upon it: "Prospective members are <u>not entitled to rely on this material</u> or on any representation, oral or written, by [Conservation Saves] regarding any particular investment, but rather are expected to rely upon their independent examination and judgment as to the prospects of any particular business venture with [Conservation Saves]." Ex. A at Ex. 2, at 10 (emphasis added). The Information Package for Gulf Land Group, LLC that Mr. Radow also received contains a similar warning not to rely upon its representations. Ex. A at Ex. 3, at 3. And, as already noted, the Promotional Materials affirmatively urged prospective investors to consult their own legal advisors, and at least Mr. Radow affirmed that he had done so. Ex. A at Ex. 1, at 2; Ex. 2 at 10; Ex. 3 at 3.

In sum, the warnings and disclaimers effectively limited any duty that Morris Manning may have had to third-parties like Plaintiffs. *Williams v. Fortson, Bentley & Griffin*, 212 Ga. App. 222, 224 (1994). As a result, "their reliance on such representations was unreasonable as a matter of law." *Legacy Acad., Inc. v. Mamilove, LLC*, 297 Ga. 15, 18 (2015); *see also J & M Assocs. v. Callahan*, 753 F. Supp. 2d 1183, 1211 (S.D. Ala. 2010). Thus, Plaintiffs cannot, as a matter of law,

establish that they were harmed by justifiable reliance upon any alleged misrepresentation by Morris Manning or Mr. Pollock. Their reliance-based claims of fraud and negligent misrepresentation must therefore be dismissed.

### C.   Plaintiffs' Common Law Claims Are Time-Barred.

Each of the common law claims asserted in the Complaint is subject to Georgia's four-year statute of limitations. O.C.G.A. § 9-3-31 (actions for injuries to personalty); *see also Duke Galish, L.L.C. v. Arnall Golden Gregory, L.L.P.*, 288 Ga. App. 75, 76 (2007) (professional negligence); *Brooks v. Freeport Kaolin Co.*, 253 Ga. 678, 679 (1985) (fraud); *Kothari v. Patel*, 262 Ga. App. 168, 174 (2003) (breach of fiduciary duty).

Notwithstanding these limitation periods, Plaintiffs have asserted obviously stale claims. On its face, the Complaint alleges that Plaintiffs made their investments and took the deductions at issue for the 2013, 2014, and 2015 tax years. Accordingly, Plaintiffs' only hope of proceeding on any of these common law theories rests on tolling the applicable statutes of limitation. But none of the tolling theories Plaintiffs allege in the Complaint rescues their claims.

Plaintiffs' first tolling theory is "the discovery rule and/or equitable tolling." Compl. ¶¶ 277–281. However, neither doctrine applies in Georgia. This is apparently another artifact from an earlier case filed by Plaintiffs' counsel in another

jurisdiction against some other defendant(s). As our Supreme Court recently noted, there is not "any Georgia precedent in which [the state supreme court] has endorsed or applied a doctrine of equitable tolling, and [the Georgia Supreme Court] . . . found only one case in which [that court] even *discuss[ed]* equitable tolling." *Stubbs v. Hall*, 308 Ga. 354, 369–70 (2020). And a simple "discovery rule" is not the starting point for claim accrual of any of the common law theories Plaintiffs have advanced.[48] Instead, Georgia courts will deny tolling to litigants who have constructive knowledge—a "should have known" standard. Thus, recognition that "something was amiss" is sufficient to put a plaintiff on notice so that by the exercise of due diligence they may discover the alleged fraud. *Bauer v. Weeks*, 267 Ga. App. 617, 620 (2004); *Gerald v. Doran*, 169 Ga. App. 22, 23 (1983).

For example, a party's suspicion that it has been misled is enough to start the

---

[48]     The four-year statute of limitations for negligent misrepresentation claims begins to run when an "economic loss actually was sustained." *Hardaway Co. v. Parsons, Brinckerhoff, Quade & Douglas, Inc.*, 267 Ga. 424, 427 (1997). The statute of limitations for a professional malpractice claim begins to run at the time of the alleged malpractice. *Shores v. Troglin*, 260 Ga. App. 696, 697 (2003). For breach of fiduciary duty, the statute "is triggered by a wrongful act accompanied by any appreciable damage." *Hendry v. Wells*, 286 Ga. App. 774, 779 (2007). And "where the gravamen of the underlying complaint is actual fraud, the limitation period is tolled 'until such fraud is discovered, or could have been discovered by the exercise of ordinary care and diligence.'" *Hunter, Maclean, Exley & Dunn, P.C. v. Frame*, 269 Ga. 844, 847 (1998).

statute of limitations running, *Smith v. Alimenta Processing Corp.*, 197 Ga. App. 57, 58 (1990), as is the receipt of conflicting information, *McClung Surveying, Inc. v. Worl*, 247 Ga. App. 322, 325 (2000). In other words, any fact that should raise a red flag is sufficient to put an end to tolling, because it imposes upon the alleged victim an obligation of diligence, and one who is not diligent cannot benefit from tolling. *Cochran Mill Assocs. v. Stephens*, 286 Ga. App. 241, 246 (2007). The Complaint repeatedly alleges circumstances from which Plaintiffs might have concluded "something was amiss," so a "discovery rule" theory of tolling is no help. *See, e.g.*, Compl. ¶ 262(*l*) (alleging that Mr. Radow and other investors received an email in December 2015 about the IRS audit of LakePoint Land Group, LLC).

To benefit from their second tolling theory for fraud-based claims, Compl. ¶ 282, that do not themselves sound in fraud (i.e., professional malpractice or breach of fiduciary duty), Plaintiffs must allege:

> (1) actual fraud involving moral turpitude on the part of the defendant; (2) the fraud must conceal the cause of action from the plaintiff, thereby debarring or deterring the knowing of the cause of action; and (3) the plaintiff must have exercised reasonable diligence to discover the cause of action, notwithstanding the failure to discover within the statute of limitation.

*Allmond v. Young*, 314 Ga. App. 230, 232 (2012).

Of course, as an initial matter, Plaintiffs must plead any entitlement to tolling based on fraud with the particularity Rule 9(b) requires, and which they have not

done.[49] *See* Compl. ¶ 282 (failing to allege any *who*, *what*, *when*, *where*, or *how* facts as to any Defendant to support fraudulent concealment). But even if the underlying fraud claims in the Complaint were pleaded with the requisite particularity, there are no allegations in the Complaint with respect to Morris Manning, Mr. Pollock, or any other Defendant that could satisfy any of the three substantive elements Georgia courts require for an otherwise time-barred complaint to escape the applicable statutes of limitation.

Finally, in *Hunter, Maclean, Exley & Dunn, P.C. v. Frame*, the Georgia Supreme Court rejected the "continu[ous] representation rule" upon which Plaintiffs rely—again, an apparent artifact from an earlier case in another jurisdiction. 269 Ga. 844, 847–49 (1998); Compl. ¶ 282. That tolling theory therefore also fails. Without a basis for tolling for their facially time-barred claims, Plaintiffs cannot hope to recover on any of their common law theories and the Court should dismiss them.

---

[49]     *See, e.g.*, *Larson v. Northrop Corp.*, 21 F.3d 1164, 1173 (D.C. Cir. 1994) (holding that "allegations of fraudulent concealment, which toll the statute of limitations, must meet the requirements of Rule 9(b)"); *Nat'l Group for Commc'ns & Computers Ltd. v. Lucent Techs. Inc.*, 420 F. Supp. 2d 253, 264–65 (S.D.N.Y. 2006) (to demonstrate appropriateness of equitable tolling, plaintiff must plead elements of fraudulent concealment with particularity pursuant to Rule 9(b)); *Pedraza v. United Guar. Corp.*, 114 F. Supp. 2d 1347, 1356 (S.D. Ga. 2000) ("a plaintiff must satisfy Federal Rule of Civil Procedure 9(b)'s requirement to plead with particularity in her complaint the facts giving rise to a claim of fraudulent concealment before a federal court will toll the statute of limitations").

## **CONCLUSION**

This Court should not be misled by the length of Plaintiffs' Complaint, its verbosity, the breadth of its cast of characters, or the number of times Morris Manning is mentioned. Once the Complaint's hyperbole and its generalized storytelling are discarded, nothing remains to plausibly identify any specific wrong by Morris Manning or Mr. Pollock or any link to the injuries asserted by Plaintiffs—who were not even clients of Morris Manning or Mr. Pollock. The Complaint fails to plead the facts necessary to survive a motion to dismiss under Federal Rules 8, 9, or 12. More fundamentally, the Complaint pleads a federal RICO claim that is time-barred and fails as a matter of law, and state law claims that are time-barred and are otherwise contrary to black-letter Georgia law. Morris Manning and Mr. Pollock therefore respectfully request that the Court grant their motion and dismiss the claims against them with prejudice.

Respectfully submitted this 30th day of October, 2020.

> */s/ John H. Rains IV*
> John E. Floyd
> Georgia Bar No. 266413
> floyd@bmelaw.com
> John H. Rains IV
> Georgia Bar No. 556052
> rains@bmelaw.com
> Jennifer L. Peterson
> Georgia Bar No. 601355
> peterson@bmelaw.com

**BONDURANT, MIXSON & ELMORE, LLP**
3900 One Atlantic Center
1201 West Peachtree Street, N.W.
Atlanta, Georgia  30309
(404) 881-4100 (telephone)
(404) 881-4111 (facsimile)

*Attorneys for Defendants*
*Morris, Manning & Martin, LLP and Timothy Pollock*

## <u>CERTIFICATE OF RULE 7.1(D) COMPLIANCE</u>

Under Local Rule 7.1(D), I hereby certify that this document complies with the font and point selections set forth in Local Rule 5.1. This document was prepared in Times New Roman 14-point font.

*/s/ John H. Rains IV*
John H. Rains IV

## **CERTIFICATE OF SERVICE**

The undersigned hereby certifies that a copy of this BRIEF IN SUPPORT OF DEFENDANTS MORRIS, MANNING & MARTIN, LLP AND TIMOTHY POLLOCK'S MOTION TO DISMISS PLAINTIFFS' ORIGINAL CLASS ACTION COMPLAINT was served on all counsel of record through the Court's electronic filing system.

This 30th day of October, 2020.

*/s/ John H. Rains IV*
John H. Rains IV