# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
### ATLANTA DIVISION

| | | |
|---|---|---|
| WILLIAM N. TURK, CARLITA B. TURK, and NORMAN RADOW, on behalf of themselves and all others similarly situated, | ) ) ) ) ) | CASE NO.  1:20-CV-02815-AT |
| *Plaintiffs*, | ) ) | |
| v. | ) ) | |
| MORRIS, MANNING & MARTIN, LLP; *et al.*, | ) ) | |
| *Defendants.* | ) ) | |
| _____ | ) | |

**BRIEF IN SUPPORT OF**
**MOTION FOR LEAVE TO FILE THIRD AMENDED COMPLAINT**

Under Federal Rule of Civil Procedure 15(a)(2), Plaintiffs respectfully move this Court for leave to file a Third Amended Complaint that addresses the statute of limitations issues set forth in the Court's Opinion and Order on Motions to Dismiss (Dkt. 290) ("MTD Order").  Plaintiffs attach to the Motion a redlined and clean version of the proposed Third Amended Complaint for the Court's convenience. The substantive changes in the Third Amended Complaint can be found at paragraphs 372 to 395.

It is in the interests of justice to allow the amendment because Plaintiffs have pleaded additional facts in the amendment to establish that limitations did not run when Plaintiffs invested in the Syndicates.  These additional allegations address specific deficiencies that the Court observed in the Second Amended Complaint as compared to the allegations in *Lechter v. Aprio, LLP*, No. 20-cv-1325, 2021 WL 4564816 (N.D. Ga. Sept. 30, 2021).  These additional allegations are substantially similar (and in many cases identical) to the ones this Court found sufficiently plausible in *Lechter* to overcome similar disclaimers at the motion to dismiss stage.

## INTRODUCTION AND BACKGROUND

In the MTD Order, this Court held that Plaintiffs' claims (other than the Georgia RICO claims) were barred by the applicable statutes of limitations based on disclaimers in the Investor Agreements.  MTD Order at 37-48.  In contrast, as the

1

MTD Order noted, this Court reached a different conclusion on the disclaimer issue in a related tax shelter lawsuit, *Lechter v. Aprio, LLP*, No. 20-cv-1325, 2021 WL 4564816 (N.D. Ga. Sept. 30, 2021).[1]  The MTD Order distinguished *Lechter* for two central reasons:   (1) unlike *Lechter,* Plaintiffs did not allege oral or written misrepresentations by Defendants contemporaneous with Plaintiffs' decisions to undertake the SCE Strategy transactions (MTD Order at 44-46), and (2) unlike *Lechter*, Plaintiffs did not allege robust allegations of fraudulent deterrence (*id.* at 46-47).

As to the first distinguishing reason, the Court noted that "[i]n *Lechter*, the Court found that there were factual questions as to whether the plaintiffs viewed any of the defendants as their own tax advisors."  Specifically, there "the plaintiffs … had alleged that they decided to invest in the Syndicates based not only on the written representations contained in the Promotional Materials, but also based on the advice and representations they separately received from the Defendants."  *Id.* at 44-45 (citing *Lechter*, 2021 WL 4564816, at *16).  Based on these allegations, this Court in *Lechter* concluded that "it would be premature to determine how the disclaimers should be read in conjunction with any additional written or oral misrepresentations Defendants have made, and whether Plaintiffs should have understood these

---

[1] As explained in footnote 24 of the MTD Order, although this Court analyzed the disclaimers in *Lechter* in the context of reliance, "the effect of the disclaimers informs the statute of limitations analysis as well."

disclaimers as qualifying any other written or oral misrepresentations Defendants may have made." *Id.* at 45 (quoting *Lechter*, 2021 WL 4564816, at *27 and citing *Raysoni v. Payless Auto Deals, LLC*, 766 S.E.2d 24, 27 (Ga. 2014)).  In contrast, the MTD Order found that Plaintiffs failed to allege that they met with any of Defendants "prior to making the decision to invest in the Syndicates, as the plaintiffs in *Lechter* had alleged," and the Court characterized that failure as "telling." *Id.* at 46.  Although the Court acknowledged that Plaintiffs generally alleged that Tim Pollock of MMM personally met with potential participants to convince them to participate in the SCE Strategy if those participants were initially reluctant, the Court noted that the allegations were not specific to any of the named Plaintiffs.  *See id.* Moreover, the Court found that

> Plaintiffs do not allege, as the plaintiffs in *Lechter* did, that after receiving Promotional Materials Defendants advised them that the transaction complied with all relevant laws and regulations; instead, they simply allege that they chose to invest in the Syndicates after receiving the Promotional Materials.

*Id.* at 45-46.

As to the second distinguishing reason, the Court explained that unlike in *Lechter*, "there are virtually no allegations in the SAC that could support Plaintiffs' theory that they were fraudulently deterred from bringing suit" despite the warnings in the Investor Agreements.  *Id.* at 46.  The Court acknowledged that Plaintiffs did make at least one allegation in the Second Amended Complaint that described a post-

investment reassurance about the appraisal valuations; however, the Court concluded that this allegation was not as robust as similar allegations in *Lechter*. *See id.* at 46-47. Specifically, this Court pointed to three allegations made by the plaintiffs in *Lechter* that made tolling more plausible, namely that the defendants

> (1) advised them that the status as a listed transaction "in no way makes this transaction illegal" and "should not significantly change the risk profile of your investment"; (2) "continued to reassure members that there was nothing to worry about' after the IRS issued Revenue Agent Reports ('RARs') indicating that it would disallow the deductions; and (3) told them after the RARs were issued "it is important to remember that this report is issued in connection with the very first stage of the IRS process, and tax counsel [Sirote] has advised us that the report marks only the beginning of the proceedings."

*Id.* at 47. Without these more robust allegations, the Court concluded that the Plaintiffs failed to "plausibly allege[] that a tolling provision applies." *Id.*

As demonstrated below, Plaintiffs can, if given the chance, allege contemporaneous oral and written misrepresentations outside of the disclaimer-containing agreements as well as provide the more robust allegations of fraudulent deterrence that this Court found sufficient in *Lechter*.

## AMENDMENT HISTORY

Although Plaintiffs have technically amended their complaint twice, they have only substantively amended once.

Plaintiffs filed their Original Complaint on July 3, 2020 (Dkt. 1). Following various motions to dismiss, Plaintiffs filed their First Amended Complaint on

January 8, 2021 (Dkt. 200).   Shortly thereafter, the OSI Defendants informed Plaintiffs of an inaccuracy that the OSI Defendants contended existed as to one sentence in paragraph 129 of the First Amended Complaint.   At the urging of the OSI Defendants, and to avoid protracted additional briefing, Plaintiffs sought leave to amend that one sentence in a Second Amended Complaint (*see* Unopposed Motion for Leave to Amend, Dkt. 216).   That was the only change other than the title of the pleading.   None of the Defendants opposed the amendment, and three of the Defendant groups affirmatively consented to it.   *Id.*   The Court granted leave to amend by docket entry on February 24, 2021, and Plaintiffs thereafter filed the Second Amended Complaint (Dtk. 218).   Consequently, Plaintiffs have only had one opportunity to provide additional factual allegations and no opportunity to do so to address the pleading deficiencies identified in the MTD Order.

## ARGUMENT AND CITATION OF AUTHORITY

### I.  Leave to amend should be freely given.

Federal Rule of Civil Procedure 15(a)(2) allows a party to amend its pleadings with leave of court, and the Rule instructs that a court "should freely give leave when justice so requires."   A district court's discretion to dismiss a complaint without leave to amend is "severely restricted" by Rule 15(a).   *Bryant v. Dupree*, 252 F.3d 1161, 1163 (11th Cir. 2001); *Sheba Ethiopian Rest., Inc. v. DeKalb County, Ga.*, 820 F. App'x 889, 899 (11th Cir. 2020).   Generally, a district court must give

plaintiffs "at least one chance to amend the complaint" before it dismisses the complaint with prejudice if a "more carefully drafted complaint might state a claim." *Bryant*, 252 F.3d at 1163.  This liberal policy of "permitting amendments to facilitate determination of claims on the merits circumscribes the exercise of the district court's discretion; thus, unless a substantial reason exists to deny leave to amend, the discretion of the district court is not broad enough to permit denial."  *Growler Station, Inc. v. Foundry Growler Station, LLC*, No. 4:18-CV-0232-AT, 2019 WL 3769639, at *2 (N.D. Ga. Jan. 9, 2019) (Totenberg, J.) (quoting *Shipner v. E. Airlines, Inc.*, 868 F.2d 401, 407 (11th Cir. 1989)).  A district court may only deny leave to amend in this situation where (1) "there has been undue delay, bad faith, dilatory motive, or repeated failure to cure deficiencies by amendments previously allowed;" (2) "allowing amendment would cause undue prejudice to the opposing party;" or (3) "amendment would be futile."  *Bryant*, 252 F.3d at 1163.   None of these criteria exist here; consequently, the Court should allow the amendment.

## II.   <u>There has been no undue delay, bad faith, or repeated failure to cure pleading deficiencies.</u>

First, there has been no undue delay, bad faith, dilatory motive, or repeated failure to cure pleading deficiencies.  There certainly has been no bad faith or dilatory motive by Plaintiffs, and Defendants cannot claim otherwise.  And the pleading history in this case does not demonstrate an undue delay or a repeated failure by Plaintiffs to correct pleading deficiencies.  Plaintiffs amended once as a

matter of course.  But an amendment as a matter of course under Rule 15(a)(1) does not count as "one chance to amend," nor does it demonstrate a repeated failure to correct deficiencies.  *Whatley v. Ohio Nat'l Life Ins. Co.*, 851 F. App'x 910, 919 (11th Cir. 2021); *accord Bryant*, 252 F.3d at 1163-64.  And this initial amendment was made without the benefit of Court's guidance on pleading deficiencies.  Following this initial amendment, Plaintiffs sought and were granted leave to amend but only to correct one purported factual discrepancy *at the urging of one of the Defendants*.  As with the initial amendment, Plaintiffs made this amendment without the knowledge of what the Court would later find deficient.  The factual discrepancy had no bearing on the MTD Order and should not be considered a "chance to amend."

The Eleventh Circuit's reversal of a denial of leave to amend in *Bryant* is instructive.  *Bryant*, 252 F.3d at 1163-65.  There the district court initially denied the defendants' motion to dismiss.  *Id.* at 1163.  The district court certified the order for immediate appeal.  *Id.*  Following remand from the appeal, the defendants renewed their motion to dismiss.  *Id.*  The district court granted the motion to dismiss with prejudice despite a request for leave to amend in the response briefing.  *Id.*  The Eleventh Circuit held that the district court abused its discretion in denying the amendment.  *Id.* at 1163-65.  The court rejected the district court's conclusion that plaintiffs' first amendment amounted to a "chance to amend," holding instead that

an amendment made as a matter of course does not count as a "chance to amend" because it does not require leave of court. *Id.* at 1163-64. Thus, the court concluded that the first "chance to amend" did not occur until the plaintiffs sought leave to amend in response to the renewed motion to dismiss. *See id.* Similarly, here Plaintiffs filed their First Amended Complaint as a matter of course—which does not count as a chance to amend.

The Eleventh Circuit in *Bryant* also reversed the denial of leave to amend because plaintiffs did not have notice of the pleading deficiencies before they sought to amend a second time. *Id.* at 1164. The district court's initial denial of the motion to dismiss did not identify any pleading deficiencies. *Id.* Implicit in this ruling was the view that the motion to dismiss did not count as notice of pleading deficiencies. *See id.* This Court and other district courts in this Circuit have held similarly and noted that ordinarily a plaintiff should be given an opportunity to correct pleading issues identified in a court's dismissal order. *See, e.g., Smith v. Ocwen Fin.*, No. 1:11-cv-484, 2011 WL 13217843, at *1 (N.D. Ga. June 10, 2011) (Totenberg, J.) ("… a plaintiff should usually be allowed one opportunity to amend the complaint upon dismissal …"); *Nodd v. Integrated Airline Servcs., Inc.*, 41 F. Supp. 3d 1355, 1368 (S.D. Ala. 2014) (rejecting argument that plaintiff was on notice of pleading deficiencies through conferences with counsel and motions to dismiss because "the Court [did] not previously ha[ve] the opportunity to point out and address any of

these claimed deficiencies"). The key is that a plaintiff must be given "fair notice of the defects and a meaningful chance to fix them." *Garcia v. Four BLF Doors, Corp.*, No. 20-CV-20024-UU, 2020 WL 12933754, at *3 (S.D. Fla. Mar. 26, 2020) (citing *Jackson v. Bank of Am., N.A.*, 898 F.3d 1348, 1358 (11th Cir. 2018) and granting leave to file amended complaint after dismissal); *accord Ga. Power Co. v. Charter Communications, LLC*, No. 1:11-CV-4461-MHS, 2013 WL 12247036, at *6 (N.D. Ga. May 28, 2013) (denying motion for reconsideration but granting leave to amend because "it is proper to allow leave to amend after dismissal, even where the plaintiff may have had other opportunities to amend …").

Thus, the first time Plaintiffs here had notice of any pleading deficiencies occurred when the Court issued its MTD Order. Armed with that notice, Plaintiffs now seek to amend to cure those deficiencies, just as the plaintiffs did in above-cited district court cases. And given that the basis for dismissal here—the statute of limitations—is an affirmative defense that Defendants had to raise and carry the burden on, it would be unjust to prevent Plaintiffs from attempting to make additional good-faith allegations demonstrating that this defense does not bar the dismissed claims as a matter of law. *See, e.g., In re Verilink Corp.*, 410 B.R. 697, 704 (N.D. Ala. 2009) (reversing bankruptcy judge's denial of leave to amend where amendment would have alleged fraudulent concealment); *Gatti v. Goodman*, No. 2:16-cv-728, 2017 WL 11527980, at *3 (M.D. Fla. Dec. 14, 2017) (granting leave

to file third amended complaint after deadline for amendments because new allegations plausibly demonstrated fraudulent concealment sufficient to toll limitations); *Lewis v. ScotBilt Homes, Inc.*, No. CV510-016, 2011 WL 13217810, at *4 (S.D. Ga. Sept. 2, 2011) (granting leave to amend to add allegations related to limitations tolling).

## III.   <u>Allowing this amendment will not unduly prejudice Defendants.</u>

Second, allowing this amendment will not unduly prejudice the Defendants. The mere passage of time does not amount to undue prejudice. *E.g., Bryant*, 252 F.3d at 1164. And the fact the Court has not yet entered a scheduling order further demonstrates that Defendants will not be unduly prejudiced. *Nodd*, 41 F. Supp. 3d at 1368. In *Bryant*, the Eleventh Circuit held that a second amendment would not cause undue prejudice even though (a) defendants had already filed a motion to dismiss and a renewed motion to dismiss, and (b) the case had been pending for over three years. *Bryant*, 252 F.3d at 1164. Here, the facts demonstrate even less prejudice because this case has not been pending nearly as long as the case was in *Bryant*. Moreover, here the Court can use the extensive motion to dismiss briefing that already exists plus some short briefing specific to the new allegations. This should allow the Court to determine whether the new allegations should alter its ruling on limitations without forcing the parties to brief the motions to dismiss from scratch.

**IV.** __Allowing the amendment will not be futile.__

Third, the amendment will not be futile.  An amendment is not futile if the cause of action, as amended, would survive a motion to dismiss.  *St. Charles Food, Inc. v. America's Favorite Chicken Co.*, 198 F.3d 815, 822-23 (11th Cir. 1999).  In making this determination, a district court must accept the new, factual allegations as true and construe those allegations in a light most favorable to the amending party. *Christman v. Walsh*, 416 F. App'x 841, 844 (11th Cir. 2011).

The statute of limitations is an affirmative defense on which Defendants bear the burden.  *See* Fed. R. Civ. P. 8(c).  Dismissal on limitations grounds is only appropriate if it is "apparent from the face of the complaint that the claim is time-barred."  *La Grasta v. First Union Sec., Inc.*, 358 F.3d 840, 845 (11th Cir. 2004).  Indeed, a motion to dismiss is "an anomalistic vehicle by which to assert an action as time-barred by a statute of limitations."  *Goldston v. Bank of Am. Corp.*, 259 Ga. App. 690, 690-91 (2003). For the dismissed claims, a four-year limitations period applies.  *See* MTD Order at 37; *see also* O.C.G.A. § 9-3-31.[2]

---

[2] The limitations periods for all of Plaintiffs' claims are four years or longer from the date of accrual. *See Jones, Day, Reavis & Pogue v. Am. Envirecycle, Inc.*, 217 Ga. App. 80, 81 (1995) (four year for malpractice under O.C.G.A. § 9-3-25); *Newell Recycling of Atlanta, Inc. v. Jordan Jones & Goulding, Inc.*, 288 Ga. 236, 238 (2010) (six years for malpractice under O.C.G.A. § 9-3-24); *Hamburger v. PFM Capital Mgmt., Inc.*, 286 Ga. App. 382, 387 (2007) (four years for fraud under O.C.G.A. § 9-3-31); *Hardaway Co. v. Parsons, Brinckerhoff, Quade & Douglas, Inc.*, 267 Ga.424, 426 (1997) (four years for negligent misrepresentation under O.C.G.A. § 9-3-31) *Crosby v. Kendall*, 247 Ga. App. 843, 849 (2001) (six years for breach of

Although the Eleventh Circuit has held that "the statute of limitations begins to run on an investment fraud claim … when the plaintiff signs a contract that contains terms contrary to those representations," (*Curtis Inv. Co. v. Bayerische Hypo-und Vereinsbank, AG*, 341 F. App'x 487, 495 (11th Cir. 2009),[3] factual issues may prevent a court from determining the effect of a disclaimer on a motion to dismiss (*see Raysoni*, 296 Ga. at 159; *see also Lechter*, 2021 WL 4564816, at *26). As this Court acknowledged in the MTD Order, in *Lechter* this Court concluded that fact issues prevented the disclaimers from barring reliance as a matter of law. *Lecter*, 2021 WL 4564816, at *26-27. This Court recognized that the *Lechter* plaintiffs had alleged sufficient facts—based on plaintiffs' communications with some of the defendants—to plausibly show that the defendants were their tax advisors. *Id.* And as the Supreme Court has acknowledged,

> [w]hen an accountant or attorney *advises* a taxpayer on a matter of tax law, such as whether liability exists, it is reasonable for the taxpayer to rely on that advice. Most taxpayers are not competent to discern error in the substantive advice of an accountant or attorney. To require the taxpayer to challenge the attorney, to seek a 'second opinion,' or to try to monitor counsel on the provision of the Code himself would nullify the very purpose of seeking the advice of a presumed expert in the first place. 'Ordinary business care and prudence' do not demand such actions.

---

fiduciary duty under O.C.G.A. § 9-3-24); *Kothari v. Patel*, 262 Ga. App. 168, 174 (2003) (four years for breach of fiduciary duty under O.C.G.A. § 9-3-31).

[3] As Plaintiffs respectfully assert in their Motion for Reconsideration, *Curtis* does not apply here because *inter alia*, unlike in *Curtis*, Plaintiffs were not injured at the time they signed the disclaimer-containing agreements.

*United States v. Boyle*, 469 U.S. 241, 251 (1985).

The Court in *Lechter* also held that plaintiffs had sufficiently pleaded fraudulent deterrence. *Lechter*, 2021 WL 4564816, at *11-15.[4]  Georgia law provides for tolling of the limitations period "[i]f the defendant or those under whom he claims are guilty of a fraud by which the plaintiffs has been debarred or deterred from bringing an action …"  Ga. Code. Ann. § 9-3-96.  Federal RICO claims are likewise subject to tolling due to "fraudulent concealment or other inequitable circumstances."  *Rowe v. Gary, Williams, Parenti, Watson & Gary, P.L.L.C.*, 181 F. Supp. 3d 1161, 1174 (N.D. Ga. 2016), *rev'd on other grounds*, 703 F. App'x 777 (11th Cir. 2017).  When a plaintiff invokes fraudulent concealment, "the statute of limitations is tolled until such fraud is discovered, or could have been reasonably discovery by the exercise of ordinary care and diligence."  *Cochran Mill Assocs. v. Stephens*, 286 Ga. App. 241, 247 (2007).  Although in some situations a plaintiff may fail to exercise diligence as a matter of law, usually the question of whether a plaintiff acted "reasonably" in attempting to discover the fraud "must be resolved by

---

[4] "Under Georgia law, fraudulent concealment by one party to a joint venture or common enterprise can toll the statute of limitations of claims against other parties to the venture." *Bibb County Sch. Dist. v. Dallemand*, No. 5:16-CV-549 (MTT), 2019 WL 1519301, at *10 (M.D. Ga. Apr. 8, 2019) (internal quotations omitted); *accord Riddell v. Riddell Washington Corp.*, 866 F.2d 1480, 1493 (D.C. Cir. 1989) ("affirmative acts of concealment by one or more conspirators can be imputed to their co-conspirators for purposes of tolling the statute of limitations"); *New York v. Hendrickson Bros., Inc.*, 840 F.2d 1065, 1084-85 (2d Cir. 1988) (same).

the trier of fact." *Id.*; *accord State Farm Mut. Auto. Ins. Co. v. Proactive Spine & Relief Ctr., Inc.*, No. 1:19-CV-04866-AT, 2020 WL 5951333, at *5 (N.D. Ga. Sept. 30, 2020) (Totenberg, J.) ("[t]he determination of whether the alleged conduct did actually toll the limitations period is a question of fact that must be decided by a jury or at summary judgment as a matter of law in conjunction with the presentation of evidence"). Moreover, "the level of diligence required by the plaintiff in investigating the fraud is lessened where a confidential relationship exists …" *Id.*; *accord Shipman v. Horizon Corp.*, 245 Ga. 808, 809 (1980). And "even non-diligent plaintiffs are protected if there is a veil of fraudulent concealment." *Pac Harbor Capital, Inc. v. Barnett Bank, N.A.*, 252 F.3d 1246, 1252 (11th Cir. 2001) (internal citations and quotations omitted).

This Court has already determined in *Lechter* the types of allegations needed at the motion to dismiss stage to overcome a disclaimer defense and to invoke tolling through fraudulent deterrence. Although this Court concluded in the MTD Order that those types of allegations were lacking or were not sufficiently robust in the Second Amended Complaint, Plaintiffs' proposed amendment includes allegations similar (and in some cases identical) to the allegations that the Court credited in *Lechter*. As shown in the proposed amendment, Plaintiffs seek leave to allege oral and written misrepresentations made to them by some of the Defendants contemporaneous with or shortly after those Plaintiffs elected to participate in SCE

Strategy transactions.  Third Am. Compl. ¶¶ 372-77, 388.  These allegations, plus others, plausibly demonstrate that Defendants were Plaintiffs' tax advisors like the Court found in *Lechter*.  *See id.*; *see also id.* ¶¶ 389-95.[5]  Plaintiffs also seek leave to make more robust allegations concerning fraudulent deterrence and have provided in their amendment the requisite details required by Rule 9(b).  *Id.* ¶¶ 379-88.  These additional allegations, coupled with the ones the Court acknowledged in the MTD Order (at 46-47) and ones already pleaded in the Second Amended Complaint, plausibly show that the applicable statutes of limitations do not bar the claims that the Court dismissed.  Consequently, the proposed amendment would not be futile.

Plaintiffs provide for the Court's convenience the following chart that sets forth the allegations the Court found sufficient in *Lechter* and compares those to examples of the additional or previously stated allegations in the proposed Third Amended Complaint.

---

[5] Like in *Lechter*, Plaintiffs alleged in their Second Amended Complaint—and do so again in the proposed Third Amended Complaint (*id.* ¶ 445)—that as a result of wrongdoing by the Professional Defendants, "Plaintiffs and members of the Class incurred substantial additional costs in hiring *new* tax and legal advisors to rectify the situation." (emphasis added).  This Court in *Lechter* held that that this allegation, along with others that likewise exist in the Third Amended Complaint, raised a "plausible inference that Plaintiffs viewed Defendants as their own tax advisors." *Lechter*, 2021 WL 4564816, at *26; *accord* MTD Order at 45.

| *Lechter* allegations identified as lacking by the MTD Order | Additional or previously stated allegations made in the proposed Third Amended Complaint |
|---|---|
| Plaintiffs allege that the Dalba Plaintiffs consulted with Defendant Greenberger before deciding to invest in the Maple Landing Syndicate, and that Greenberger advised them "the SCE Strategy complied with the requirements of Code Section 170(h) and, as a result, they could legally report this allocated charitable contribution deduction provided by the SCE Strategy." MTD Order at 44-45 (quoting *Lechter*, 2021 WL 4564816, at *26) | In late 2014, prior to engaging in the Industrial Syndicate Transaction, Plaintiff William Turk and his accountant, Ronald Bracewell, met with Frank Schuler of OSI to discuss the SCE Strategy and the details of the Industrial Syndicate Transaction. At that meeting Schuler, on behalf of the OSI Defendants, stated that the Industrial Syndicate Transaction would provide a "legal and proper deduction." And when asked if the transaction was legal and legitimate, Shuler responded "yes." Schuler further stated that OSI "couldn't wait [for their Syndicates' conservation easement deductions] to get challenged" so they could "prove" their legality. Third Am. Compl. ¶ 373. |
| Similarly, Plaintiffs allege that Lechter consulted with both Defendant Jowers and Defendant Zak before deciding to invest in the Oakhill Woods Syndicate, and that these Defendants "advised Lechter that the SCE Strategy complied with the requirements of Code Section 170(h) and, as a result, he could legally report his allocated charitable contribution deduction provided by the SCE Strategy." MTD Order at 45 (quoting *Lechter*, 2021 WL 4564816, at *26) | On multiple occasions both prior to and after Radow's purchase of an interest in the Lakepoint, FG River, and Gulf Land Syndicates, Radow had conversations with Matt Ornstein of the OSI Defendants, who told Radow that the SCE Strategy transactions that Radow ultimately invested in were designed by the "best lawyers," that OSI had assembled the "best team", and stated that Radow "should have every confidence" in the transactions. When Radow asked Ornstein prior to his first investment in the first transaction whether "we are taking a risk here," Ornstein replied "no." And both before and after Radow invested in the SCE |

| | |
|---|---|
| | Strategy transactions, Ornstein told Radow that the valuations of the appraisals for the SCE Strategy transactions were "rock solid."  Third Am. Compl. ¶ 375.[6] |
| Compare that to the allegations in *Lechter*.  In the complaint in that case, the plaintiffs alleged that the defendants (1) advised them that the status as a listed transaction "in no way makes this transaction illegal" and "should not significantly change the risk profile of your investment".   MTD Order 47 (quoting *Lechter*, 2021 WL 4564816, at *13-14) | Ryan Ellison of the OSI Defendants sent an email on January 5, 2017 to Turk and Radow and other investors in OSI's SCE Strategy transactions.  The email was based upon and quoted representations and conclusions by Pollock and MMM, which Pollock and MMM knew and intended would be transmitted to the investors. Ellison's email addressed IRS Notice 2017-10 and reassured Turk and Radow and other class members about the legality of the SCE Strategy transactions and invited delay by the members in filing lawsuits by stating that (1) "**you will still be awarded (and can use) any charitable deductions that you are entitled to receive as a member of one of our partnerships**" (emphasis in original), (2) "[t]his Notice was issued because the IRS incorrectly assumes that conservation easements through pass-thru entities like partnerships are more likely to contain inflated appraisals and take inappropriately supported deductions", (3) "**[t]his is an Unfortunate and Poor Decision by the IRS which Countermands Congressional Intent**" (emphasis in original), (4) the listed transaction designation was "improperly appl[ied]" |

---

[6] Plaintiffs make similar allegation regarding Plaintiff Radow's conversations in paragraphs 376-77 of the Third Amended Complaint.

| | |
|---|---|
| | to syndicated conservation easements, (5) "[w]e believe this 11th hour effort of the IRS will not be viewed as favorably by the next administration", (6) the Notice suffered from a "lack of justification," and (7) "many believe that this Notice may be immediately repealed once the new administration takes office." Third Am. Compl. ¶ 381.[7] |
| Compare that to the allegations in *Lechter*. In the complaint in that case, the plaintiffs alleged that the defendants … (2) "continued to reassure the members that there was nothing to worry about" after the IRS issued Revenue Agent Reports ('RARs') indicating that it would disallow the deductions" MTD Order 47 (quoting *Lechter*, 2021 WL 4564816, at \*13-14) | June 4, 2017 email from Matt Ornstein of OSI to Norman Radow regarding audit letters wherein Ornstein indicated [*sic*] stated: "And please rest assured that we have complete confidence in the valuations and have the resources to defend through tax court if we have to;" Third Am. Compl. ¶ [351(zz)].[8] |
| Compare that to the allegations in *Lechter*. In the complaint in that case, the plaintiffs alleged that the defendants … (3) told them after the RARs were issued "[i]t is important to remember that this report is issued in connection with the very first stage of the IRS process, and tax counsel [Sirote] has advised us that the report marks only the beginning of the proceedings." MTD Order 47 (quoting *Lechter*, 2021 WL 4564816, at \*13-14) | In a letter dated May 25, 2017 that was sent via U.S. Mail and/or email to all members of Industrial Syndicate, including but not limited to Turk, Matthew Kaynard of the OSI Defendants notified the members of the Industrial Syndicate that the IRS was auditing the Syndicate for its tax year 2014 regarding its conservation easement deduction. *Inter alia*, the letter reiterated and reassured Industrial Syndicate members that they "should have claimed their proportional share of the charitable contribution deductions" |

---

[7] Plaintiffs make additional allegations on this point in paragraphs 380 and 382 of the Third Amended Complaint.

[8] Plaintiffs previously made this allegation in the Second Amended Complaint and do so again in the Third Amended Complaint. *See also* MTD Order at 46-47.

|  | and reassured the Syndicate members by stating that "[w]e are prepared to defend our positions [regarding the conservation easement deduction] before the IRS Office of Appeals, the IRS Office of Chief Counsel and, if necessary, the United States Tax Court". The letter further offered reassurance and invited delay by the members in filing lawsuits by stating that "[t]his audit is only the first stage in the process" (emphasis in original) and that "[b]ecause of limited resources and large caseloads, we expect that the IRS engineers will take a long time to complete their report" and that "[f]or this reason, we cannot currently provide an estimate for when the audit will be over." Third Am. Compl. ¶ 383.[9] |
|---|---|

## **CONCLUSION**

The Court should grant Plaintiffs leave to file their Third Amended Complaint.

---

[9] Plaintiffs make additional allegations on this point in paragraphs 384-87 of the Third Amended Complaint.

This 21st day of April, 2022.

Respectfully submitted,

/s/ *Jeven R. Sloan*
David R. Deary (admitted *pro hac vice*)
W. Ralph Canada, Jr. (admitted *pro hac vice*)
Jeven Sloan (GA Bar No. 652727)
Wilson E. Wray, Jr. (admitted *pro hac vice*)
John McKenzie (admitted *pro hac vice*)
Donna Lee (admitted *pro hac vice*)
Tyler M. Simpson (admitted *pro hac vice*)
**LOEWINSOHN DEARY SIMON RAY LLP**
12377 Merit Drive, Suite 900
Dallas, Texas 75251
(214) 572-1700 Telephone
(214) 572-1717 Facsimile
davidd@ldsrlaw.com
ralphc@ldsrlaw.com
jevens@ldsrlaw.com
wilsonw@ldsrlaw.com
johnm@ldsrlaw.com
donnal@ldsrlaw.com
tylers@ldsrlaw.com

Edward J. Rappaport (GA Bar No. 594841)
erappaport@saylorlaw.com
**THE SAYLOR LAW FIRM LLP**
1201 W. Peachtree Street
Suite 3220
Atlanta, GA 30309
(404) 892-4400 Telephone

*Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

The undersigned certifies that on April 21, 2022, a true and correct copy of the foregoing document was filed with the Clerk of the Court by using the CM/ECF system.

*/s/ Jeven R. Sloan*
Jeven R. Sloan

## CERTIFICATE OF COMPLIANCE

The undersigned certifies that the foregoing document was prepared using Times New Roman 14-point font in accordance with Local Rule 5.1

*/s/ Jeven R. Sloan*
Jeven R. Sloan